## No. 17,631.

BERT EPSTEIN, ET AL. *v.* CITY AND COUNTY OF DENVER.
(293 P. [2d] 308)

Decided January 16, 1956.

Messrs. Donaldson, Hoffman & Goldstein, for plaintiffs in error.

Mr. John C. Banks, City Attorney, Mr. Joseph E. Newman, Assistant, Mr. Sherman G. Finesilver, Assistant for defendant in error.

*En Banc.*

Mr. Justice Knauss delivered the opinion of the Court.

Defendant in error was petitioner in the trial court, and will herein be referred to as the "City," and plaintiffs in error were Respondents in an eminent domain proceeding brought by the City. Plaintiffs in error will be referred to as Respondents.

By its petition filed March 17, 1954, the City sought to condemn three lots located at the southwest corner of Washington Street and 46th Avenue in Denver, "for rights of way and access rights required for the Valley Highway as planned, described and set forth in the Agreement dated July 1, 1947, entered into between the City and County of Denver and the State Highway Department of the State of Colorado, referred to in said Ordinance No. 86, series of 1947 * * *."

On March 30, 1954 an order for immediate possession of the property was entered in favor of the City. On

the trial the sole issue was the market value of the land taken. Trial was to a jury on October 5, 1954. The jury's verdict fixed the market value of the property at $20,000.00. A motion for new trial was overruled and judgment was entered in favor of Respondents and against the City in accordance with the verdict. Being dissatisfied with the award, Respondents bring the case here by writ of error.

For reversal it is urged:

1. That the trial court erred in admitting evidence of the price paid by Respondents for this property more than four years before the date of trial.

2. That the trial court erred in admitting evidence as to the price paid by Respondents for the subject property after the Presiding Judge of the Denver District Court in connection with a deposition, taken preliminary to trial, ruled that this evidence was not admissible.

3. That counsel for the City in the closing arguments to the jury went beyond the evidence and referred "to the knowledge, intentions, character and state of mind of the 'Respondents, '" which argument counsel assert was calculated to arouse the passion and prejudice of the jurors by calling their attention to the purported scheme of obtaining a "huge windfall."

4. That the trial court erred in not permitting Respondents to show that other appraisals of the subject property had been made at the request of the City, by persons not called as witnesses by the City, and that counsel for Respondents "had the right to comment in closing arguments upon the fact that such other experts had not appeared and testified for the city."

Three major witnesses testified on behalf of Respondents. One witness fixed the value of the property taken as "between $45,000 and $60,000; another fixed the value at $50,000, and the third testified that in his opinion the property was worth $45,000.

The city submitted the testimony of five witnesses, two of whom testified as to traffic flow at the inter-

section where the property involved is located; another was the former owner of this property who, over the objection of Respondents, testified that in May, 1950, she sold the property to Respondents for eight thousand dollars. On cross-examination she testified that at the time of the 1950 sale the Boulder Toll Road had not been opened; the Valley Highway had not been completed, and that there was no traffic at the intersection where the subject property is located, either from the Toll Road or the Valley Highway; she further testified that the Denver Coliseum had not been erected at that time. Another witness for the City testified as to the amount of gasoline sold by him at a filling station directly across the street from the subject property. A real estate man, who qualified as an analyst, agent and appraiser, and who had appraised numerous properties in the vicinity of the property in question, testified that the value of the subject property was seventeen thousand dollars.

In rebuttal the Respondents offered the evidence of a Mr. Farrell, a land officer for the City. He was asked if the City did not have additional appraisals of the subject property made by a Mr. Leet and a Mr. Conway. The trial court sustained an objection to this inquiry and refused an offer of proof that the witness would testify that Messrs. Leet and Conway had appraised Respondents' property at "a higher amount than the City's witness."

The only matter which the jury had to determine was the market value of the subject property. This issue was submitted under instructions which are not here challenged.

In *Wassenich v. Denver*, 67 Colo. 456, 186 Pac. 533, it was said: "Market value ordinarily means what price property would bring if sold in the open market under ordinary and usual circumstances for cash, assuming that the owner is willing to sell and the purchaser willing to buy, but neither under any obligation to do so."

The 1950 sale of the property to the Respondents was a free, open and voluntary sale, according to the record before us, and it was so declared by the trial judge. Nothing in the record discloses that the character of the land had changed during the interim between 1950 and the trial in 1954. True, the Boulder Toll Road; the Valley Highway and the Denver Coliseum had not been completed in 1950, but each and every one of these projects were in process of completion and well-known to all interested citizens of Denver. These facts were amply brought out by the evidence in the case.

Respondents contend that the evidence of the purchase price of the property was too remote in time. In the Wassenich case, *supra,* this Court said: "* * * one of the sales was about three years prior to the trial, which it is contended is too remote. Considering the use, character and location of the properties, we do not think the sales were too remote in time to make it an abuse of discretion to admit the evidence."

If not too remote in point of time, and if neither economic nor physical conditions have changed, it is uniformly held that voluntary prior sales of the subject property may be shown in evidence in eminent domain proceedings. The determination of these qualifying factors is left largely to the discretion of the trial judge, and his decision on admissibility is not ordinarily overruled. 1 Orgel, Valuation Under Eminent Domain, Sec. 136, p. 581. *Thornton v. City of Birmingham,* 250 Ala. 651, 35 So. (2d) 545, 7 A.L.R. 2d 773. The trend of the modern decisions is to admit evidence of comparable sales, apparently under the reasoning in *City of Paducah v. Allen,* 111 Ky. 361, 63 S.W. 981, where it was said: "Such sales, when made under normal and fair conditions, are necessarily a better test of the market value than the speculative opinions of witnesses; for, truly, here is where 'money talks.' "

In the instant case the actual sale price of the property, while not controlling in the determination of

its market value in 1954 was, to say the least, a fact which the jury might consider in reaching a verdict. There is competent evidence in the record supporting the verdict of the jury which fixed the value at $20,000.00.

*Lembo v. Town of Framingham,* 330 Mass. 461, 115 N.E. (2d) 370 was decided in 1953; the sale was in 1944 and trial had in 1948. The court there said:

"The Petitioners contend that we should notice judicially a rapid rise in real estate values during those four years. Whether the time of buying the property was so remote in time that the price would afford no indication of the value at the time of the taking was largely within the discretion of the judge * * * the conditions during the four years in question were doubtless within the memories of the jurors and they could make due allowance for them. We think there was no error in admission of this evidence."

In *Simmonds v. United States,* 199 F. (2d) 305, the court overruled the objection based on remoteness of a 1944 sale as evidence of a 1948 value. It was there said: "Any changes in circumstances between 1944 and 1948, as they affect the value of the property, would go to the weight to be given to the 1944 purchase price, but not to the admissibility of such evidence."

*Douglas County v. Myers,* 201 Ore. 59, 268 P. (2d) 625, (decided in 1954) is a case where there was a span of five years between the date of purchase and the date of trial. The court held that the sale price was admissible.

The price paid for property three years before trial was held admissible in *City of Spokane v. Williams,* 157 Wash. 120, 288 Pac. 258. See, also, *United States v. Ham, et al.,* 187 Fed. (2d) 265.

We quote from *United States v. Becktold Co.,* 129 Fed. (2d) 473:

"* * * The fact that the purchase was made some fourteen years before the date of taking the property went to the weight of the evidence rather than to its

admissibility. The Court in its discretion, properly admitted the testimony. * * * A judicial discretion as to the admission of evidence of this character shall vest in the trial court and that discertion will not ordinarily be disturbed on appeal."

The following authorities hold admissible evidence concerning prior sales of the property sought to be condemned: *Rea v. Pittsburg & C. R. Co.,* 229 Pa. St. 106, 78 Atl. 73 (a two year eight months prior sale); *People v. Vinson,* 9 Cal. App. (2d) 100; 221 P. (2d) 161, (a three year sale); *Dickson v. Davidson County,* 28 Tenn. App. 210, 188 S.W. (2d) 114 (a three year sale); *H. & H. Supply Co. v. United States,* 194 Fed. (2d) 553 (a four year sale); *Reeves v. City of Dallas,* (Tex. Civ. App.) 195 S.W. (2d) 575 (a five year sale); *Dickinson v. United States,* 154 Fed. (2d) 642 (a six year sale); *Love v. United States,* 141 Fed. (2d) 981 (a seven year sale); *Forest Preserve District v. Kean,* 298 Ill. 37, 131 N.E. 117 (a seven year sale); *City of St. Louis v. Paramount Shoe Manufacturing Co.,* 237 No. App. 200; 168 S.W. (2d) 149 (a nine year sale).

We believe that the great weight of authorities found in the adjudicated cases, as well as the statements of text writers hold that the 1950 purchase price of the subject property was admissible, and that the trial court did not commit error in so ruling.

The trial court in announcing its ruling on the admissibility of this evidence directed attention of counsel to the fact that counsel for Respondents in his opening statement to the jury said "that the Respondents did not intend to deny the fact that they purchased the subject property in June, 1950, for $8,000, but that they would offer evidence which would tend to show such was not the present value of the premises and that such perhaps was not even the full fair market value as of the date of that sale." The exact language of Respondents' counsel as found in the record, was as follows: "* * * Respondents do not deny for a moment that this

property was purchased approximately four years and six months ago * * *. The property was purhased for $8,000.00, and you shall hear from experts on filling station corners such as these, even though purchased for $8,000.00 are worth $50,000 today. * * *" In the direct examination of Respondents' first witness their counsel referred to the 1950 purchase price and its effect on the present value of the property. Respondents, are, therefore, in no position to urge error in the admission of this evidence, for they first brought the 1950 sales price to the attention of the court and jury.

In *Snapp v. Manning,* 77 Colo. 268, 236 Pac. 131, this court said: "Objection is also made by plaintiffs in error to the admission of certain testimony, but they themselves first brought up the subject matter; it bore on the issues, and they waived the right to object to similar testimony on behalf of the defendants in error. They were not privileged, under the circumstances to deny the materiality of this testimony."

We take judicial notice of the fact that in the Denver District Court the Presiding Judge hears the preliminary motions and after the issues are framed the case is then assigned to another judge for trial. When the City took the depositions of the Respondents, preliminary to trial, Respondents refused to disclose the 1950 purchase price of the property. The Presiding Judge on application of the City to compel the plaintiffs in error to disclose the 1950 price, denied the request of the City. Later, in conformity with the practice, the case was assigned to another judge of the district court for trial. Counsel for Respondents now urge that under C.R.S. '53, 37-4-18 Judge McWilliams, trial judge, was obligated to follow the ruling of the presiding judge on the admissibility of evidence as to the 1950 sale price of the subject property. The ruling of the presiding judge was a preliminary or interlocutory order only. It was not embodied in any pre-trial order entered in the case. It was a ruling and not "a judgment, decree or order rendered or made by

another judge of the same court," which is prohibited by C.R.S. '53, 37-4-18. In making his ruling, the trial judge observed that the decision of this court in *Rice v. Van Why,* 49 Colo. 7 "does not indicate whether the court was construing the section 108 [now C.R.S. '53, 37-4-18] * * * although the *ratio decidendi* in that regard would indicate that such might well have been the case. In any event this court accedes to the logic and reason ing of our Supreme Court in *Rice v. Van Why.*"

*State of Oregon v. Superbilt Manufacturing Co., Inc.,* (Ore.) 281 P. (2d) 707, is directly in point. There, the presiding judge denied a motion to strike a portion of defendant's amended answer in an eminent domain proceeding. The Oregon Supreme Court held that the ruling was not binding on the trial judge and that the trial judge was in error in viewing the presiding judge's ruling as to the law of the case and obligatory on him. We quote a pertinent portion of the opinion:

"However, responsibility for the conduct of the trial according to the applicable law and rules of evidence is solely that of the trial judge, and though a prior ruling upon the law by the presiding judge may be and most often is persuasive, nevertheless, it is in no sense binding upon the trial court. It must be kept in mind that if error is committed upon the trial, that error is chargeable to the trial judge, and not to the presiding judge."

See, also, *Landau v. Fred Schmitt Contracting Co.,* 237 Mo. App. 908, 179 S.W. (2d) 138; *State ex rel William Coal Co. v. Duncan,* 211 Ind. 203, 6 N.E. (2d) 342; *Falzone v. Burgoyne,* 317 Mass. 493, 58 N.E. (2d) 751.

We hold that the trial judge correctly ruled on the admissibility of the evidence concerning the 1950 purchase price and that he was not bound by the prior interlocutory ruling entered by the presiding judge when the deposition was being taken.

It is admitted that the closing arguments to the jury were not taken down by the court reporter, and hence

there is nothing in the record concerning them save two affidavits on behalf of Respondents and two counter-affidavits on behalf of the City. If improper arguments were made by counsel for the City concerning "wind-falls" it was the duty of counsel for Respondents then and there to object and obtain a ruling from the trial judge as to the propriety of the remarks.

The trial court properly instructed the jury that "the opening statements and the arguments of counsel are not evidence."

The learned trial judge in passing on Respondents' motion for a new trial, said: "It is inconceivable to this court that this court would carefully exclude evidence as to the knowledge, motives or purpose behind the respondents' purchase of the subject property and thereafter in closing argument would allow Mr. Newman [counsel for the city] to in so many words tell the jury that the respondents bought with full knowledge the City was about to condemn and they accordingly bought for the express purpose of speculating in the hope they would get from the City much more than they had paid Mrs. Gibbs." The trial court also said: " * * * but as the court recalls, Mr. Newman did not make the statements attributed to him as they are set forth above [in the affidavits filed by counsel for Respondents]."

The trial court expressly found no improprieties in the closing arguments of counsel for the City. A careful reading of this record amply discloses that the trial judge studiously and carefully protected the rights of all parties to this litigation.

Respondents called as a witness in rebuttal W. A. Farrell, Land Officer of the City, and propounded the question to him as to whether or not the City had three appraisals made on the subject property, including two witnesses who did not testify at the trial. The City's objection to this interrogation was sustained, whereupon counsel for Respondents made an offer "to prove by this witness that as head of the Land Office he had hired

three appraisers to appraise the property in question; that two of them had not appeared in this case. Although I am certain he cannot answer what their appraisals were, because they would be hearsay, we can show the jury that the City and County of Denver hired three appraisers, and only one of them has appeared here. We can let the jury draw their own conclusions as to why the City failed to present the other appraisers."

*Hickey v. United States* (Pa. 1952), 17 F.R.S. 505, holds that the owner of property sought to be condemned is not entitled to know the names and addresses of persons who made appraisals at the request of the condemning agency. In the instant case counsel for Respondents knew the names of the appraisers they claimed had made additional appraisals, for they designated them as Mr. Leet and Mr. Conway. Respondents made no attempt to call these witnesses.

■ We conclude that Respondents were not prejudiced by the ruling of the court concerning the offer of proof. The jury was obligated to determine the value of the subject property upon the evidence before it under the instructions of the court, and could not indulge in surmises or speculation concerning what might or might not have been the result of an appraisal by some person or persons not produced as witnesses in the cause.

Perceiving no prejudicial error in the record, the judgment is affirmed.