Jake O. BROYLES, Appellant,

v.

The FORT LYON CANAL COMPANY, Southeastern Colorado Water Conservancy District, and Robert Jesse, Division Engineer for Water Division No. 2, Appellees.

No. 80SA328.

Supreme Court of Colorado, En Banc.

Nov. 16, 1981.

Rehearing Denied Dec. 7, 1981.

Carl M. Shinn, Lamar, for appellant.

Lefferdink & Davis, John J. Lefferdink, Lamar, Calkins, Kramer, Grimshaw & Harring, Wayne B. Schroeder, Denver, for The Fort Lyon Canal Co., appellee.

Fairfield & Woods, Charles J. Beise, Howard K. Holme, Kevin B. Pratt, Denver, for Southeastern Colorado Water Conservancy Dist., appellee and cross-appellant.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Dennis M. Montgomery, Jeffrey J. Kahn, Asst. Attys. Gen., Denver, for State Engineer, amicus curiae.

LOHR, Justice.

The appellant, Jake O. Broyles, seeks review of a partial summary judgment entered by the water judge for Water Division No. 2, denying Broyles' application that the conditional water rights decreed to four irrigation wells in the Arkansas River Valley be made absolute. Broyles' application also requested correction of the decreed legal descriptions of three of the wells. The trial court denied the objectors' motion for a partial summary judgment on this issue, and one of the objectors, Southeastern Colorado Water Conservancy District (Southeastern), cross-appeals from the denial of that motion.[1] We affirm the partial summary judgment and dismiss Southeastern's cross-appeal as premature.

Some history relating to Broyles' wells is necessary to an understanding of the matters in dispute. Before March, 1972, Broyles had six irrigation wells which had been drilled pursuant to permits issued by the Colorado State Engineer (state engineer). Beginning in that month Broyles applied for and received well permits from the state engineer authorizing him to drill five new wells as replacement wells for the existing six.[2] None of the original or replacement wells is located within a "designated ground water basin" as that term is defined in section 37–90–103(7), C.R.S.1973. All are near the Arkansas River and derive their supply of water from the unconsolidated alluvial aquifer supporting that river.

After receiving the replacement well permits, Broyles filed an application for water rights pursuant to section 37–92–302, C.R.S. 1973. Based on that application, the water court entered a decree on February 14, 1975, awarding absolute and conditional water rights to the wells, including the following:

Well Number 2  Absolute: 710 g.p.m.
Conditional: 1290 g.p.m.
Maximum Annual Production: 1325 acre feet
Priority (both awards): June 6, 1955

Well Number 3  Absolute: 900 g.p.m.
Conditional: 1100 g.p.m.
Maximum Annual Production: 1325 acre feet
Priority (both awards): June 13, 1955

Well Number 4  Absolute: 1025 g.p.m.
Conditional: 975 g.p.m.
Maximum Annual Production: 1325 acre feet
Priority (both awards): March 24, 1964

Well Number 5  Absolute: 700 g.p.m.
Conditional: 1300 g.p.m.
Maximum Annual Production: 1325 acre feet
Priority (both awards): January 11, 1961

1. The Fort Lyon Canal Company was the other objector. On this appeal it supports Broyles' position that the order denying the objectors' motion for partial summary judgment with respect to correction of the legal descriptions is not final and so is not now appealable.

2. The relevant replacement wells, new permit numbers and permit numbers of the wells replaced are as follows:
well number 2, permit number RF1099, replacing permit number 10072.
well number 3, permit number RF1097, replacing permit number 10073.
well number 4, permit number RF1096, replacing permit number 5145–F.
well number 5, permit number RF1098, replacing permit number 2906–F.
Each of the replacement well permits contains the words "Approved as a replacement for ... [the permit number of the original well]."

The decree reflected that the wells are replacement wells; the following notation for well number 2 is illustrative: "STATE ENGINEER'S WELL NUMBER: 10072, replaced by RF 1099."

Wells number 1, 2, and 3 were misdescribed in the application. The section, township, and range in which they are located are accurately described, but the identification of the quarter section is erroneous in each case. These errors were carried forward into the court's decree.

On May 9, 1979, Broyles filed the application which has resulted in this appeal. By that application he sought to have the conditional water rights previously decreed to wells number 2 to 5 made absolute and to have the legal descriptions of wells number 1, 2, and 3 corrected.

In support of his application to make the conditional water rights absolute, Broyles stated that the production from the new wells fell short of the amount decreed but that he had obtained permits from the state engineer in April of 1979 to use the respective replaced wells as alternate points of diversion for the new wells number 2, 3, and 4.[3] As to well number 5, Broyles stated that he had obtained a permit from the state engineer to drill an additional well; such well had been drilled; and an application to use that new well as an alternate point of diversion for well number 5 was pending before the state engineer. Broyles stated further that as to each set of wells he had pumped water from the original replaced well (or the additional well in the case of well number 5) at the rate necessary to bring the combined production of the replaced well and the replacement well up to the total of the absolute and conditional amounts decreed. These statements can be illustrated in tabular form:

| Well No. | Amount Decreed Absolute | Amount Decreed Conditional | Amount Produced From Replacement Well | Amount Produced From Replaced Well |
|---|---|---|---|---|
| 2 | 710 g.p.m. | 1290 g.p.m. | 710 g.p.m. | 1290 g.p.m. |
| 3 | 900 g.p.m. | 1100 g.p.m. | 900 g.p.m. | 1100 g.p.m. |
| 4 | 1025 g.p.m. | 975 g.p.m. | 1025 g.p.m. | 975 g.p.m. |
| 5 | 700 g.p.m. | 1300 g.p.m. | 700 g.p.m. | 1300 g.p.m.[4] |

The state engineer's well permits for use of the replaced wells as alternate points of diversion for wells number 2, 3, and 4 reflect that they are to be so used; limit the combined yield at the decreed point of diversion and alternate point of diversion to the total amount decreed absolute and conditional to the well in question under the February 14, 1975, decree; and limit the combined annual withdrawal to 1325 acre feet for each set of wells.

The Fort Lyon Canal Company (Ft. Lyon) and Southeastern filed statements of opposition to Broyles' May 9 water court application. They contend that Broyles was required to plug and abandon the replaced wells and so could not rely upon production from those wells to make his decreed conditional water rights absolute. The objectors find the source of that requirement in the definition of "replacement well" in section 37–90–103(13), C.R.S.1973, which mandates abandonment of the original well upon completion of a replacement well. In the alternative, they contend that production from the replaced wells cannot support

---

3. The state engineer permits authorizing use of the replaced wells as alternate points of diversion for the replacement wells are as follows: for the well replaced by well number 2, 24126–F; for the well replaced by well number 3, 24124–F; and for the well replaced by well number 4, 24125–F.

4. The 1300 g.p.m. is produced from the additional well, drilled under permit number 2906–RF, not the original replaced well. *See* the text preceeding the table.

Broyles' application because utilization of the replaced wells as alternate points of diversion for the water rights decreed to the replacement wells has never been applied for or recognized by judicial decree as required by section 37–92–302, C.R.S.1973 (1980 Supp.). Finally, they oppose the correction of the legal descriptions of wells number 1 to 3 on the basis that the errors are substantive, not procedural, and correction is barred by expiration of the three-year period prescribed by section 37–92–304(10), C.R.S.1973 for filing petitions to correct substantive errors.

Ft. Lyon moved for a partial summary judgment denying Broyles' application that the conditional water rights be made absolute and denying Broyles' petition for correction of the legal descriptions. When that motion came on for hearing, Southeastern joined in it. The water court concluded that the February 14, 1975, decree reflected a judicial determination that the original wells had been replaced by wells number 2 to 5, that the definition of "replacement well" in section 37–90–103(13) mandates abandonment of a replaced well upon completion of a replacement well, and that under the doctrine of res judicata Broyles is bound by the abandonment requirement. It also noted that "[a] replacement well permit cannot be used at the point of diversion of the original well (i.e., the "replaced" well) to fill a conditional priority decreed to the replacement well." The trial court reserved for later determination the question whether Broyles had exercised reasonable diligence in the development of the conditional water rights decreed to wells number 2 to 5. *See* section 37–92–301(4), C.R.S.1973.

The water judge denied the objectors' motion for partial summary judgment with respect to changing the decreed well descriptions, holding that the errors in question were clerical errors, not substantive errors, and may be corrected even after expiration of the three years prescribed by section 37–92–304(10), C.R.S.1973. In so ruling, the trial court relied on our decision in *Telluride Co. v. Division Engineer in and for Water Division No. 4*, 195 Colo. 143, 575 P.2d 1297 (1978).

This appeal and cross-appeal followed.

## I.

Broyles contends that the trial court erred in holding that the 1975 water court decree barred his subsequent use of the replaced wells as alternate points of diversion for the rights decreed to the replacement wells. We address this contention in part IA of this opinion. However, we do not regard the res judicata question, upon which the parties principally have focused their attention, as dispositive of the issue.[5] Our affirmance of the partial summary judgment is based primarily upon our determination that, in the absence of a judicial decree recognizing the replaced wells as alternate points of diversion for the respective replacement wells, production from the replaced wells cannot be relied on to make absolute the conditional water rights decreed to the replacement wells. This holding is presented in part IB.[6]

## A.

■ Broyles' argument that he was not required to abandon the replaced wells begins with the premise that the Colorado Ground Water Management Act (Management Act), section 37–90–101 *et seq.*, C.R.S. 1973 (1980 Supp.), and the Water Right

5. As explained more fully below, the res judicata question is not dispositive because it concerns only Broyles' right, subsequent to the decree of water rights to the replacement wells, to continue use of the replaced wells pursuant to their original permits. Finding that this is the effect of the 1975 water court decree does not necessarily preclude Broyles' later use of these wells pursuant to a subsequent alternate point of diversion decree. Such a decree is independent of the earlier use of the replaced

wells and would not be barred by, or inconsistent with the effect of, the 1975 decree.

6. As the alternate point of diversion utilized for well number 5 is a new well, not a replaced well, the res judicata argument does not apply to it. The trial court did not note this distinction. However, our analysis in part IB, upon which our affirmance of the partial summary judgment is principally founded, is equally applicable to well number 5.

Determination and Administration Act of 1969 (1969 Act), section 37–92–101 *et seq.*, C.R.S.1973 (1980 Supp.), deal with separate and mutually exclusive waters, *i.e.*, "designated ground water" as defined in section 37–90–103(6) under the Management Act, and "underground water" as defined in section 37–92–103(11) under the 1969 Act. This premise is correct. *State ex rel. Danielson v. Vickroy,* Colo., 627 P.2d 753 (1981); *Larrick v. District Court,* 177 Colo. 237, 493 P.2d 647 (1972). From this starting point, Broyles argues that definitions in the Management Act (as relevant here, the definition of "replacement well") have no applicability to proceedings with respect to underground water. As a result, use of the term "replacement well" with respect to wells outside a designated ground water basin does not require abandonment of the replaced well. This part of his argument will not survive an attentive reading of the relevant statutes.[7]

Section 37–92–302, C.R.S.1973 (1980 Supp.), a part of the 1969 Act, prescribes the procedures for obtaining a judicial "determination of a water right or a conditional water right and the amount and priority thereof." When a well is to be used to divert water, the statute imposes the following special requirement:

> In the case of applications which will require construction of a well, no decision, ruling, or order granting a water right shall be entered until the application shall be supplemented by a permit to construct a well or evidence of its denial by the state engineer pursuant to section 37–90–137 or evidence of the state engineer's failure to grant or deny such a permit within six months after application to the state engineer therefor.

Section 37–92–302(2), C.R.S.1973.

Section 37–90–137 of the Management Act is explicitly applicable to wells outside designated ground water basins, contrary to Broyles' contention. It provides in pertinent part:

> From and after May 17, 1965, no new wells shall be constructed *outside the*

*boundaries of a designated ground water basin,* nor the supply of water from existing wells *outside the boundaries of a designated ground water basin* increased or extended, unless the user makes an application in writing to the state engineer for a "permit to construct a well", in a form to be prescribed by the state engineer. (Emphasis added).

Section 37–90–137(1), C.R.S.1973.

It then goes on to describe the duties of the state engineer in considering an application for a replacement well to be drilled outside the boundaries of a designated ground water basin:

> Upon receipt of an application for a replacement well or a new, increased, or additional supply of ground water from an area outside the boundaries of a designated ground water basin, accompanied by a filing fee of twenty-five dollars, the state engineer shall make a determination as to whether or not the exercise of the requested permit will materially injure the vested water rights of others. If the state engineer finds that there is unappropriated water available for withdrawal by the proposed well and that the vested water rights of others will not be materially injured, and can be substantiated by hydrological and geological facts, he shall issue a permit to construct a well, but not otherwise; except that no permit shall be issued unless the location of the proposed well will be at a distance of more than six hundred feet from an existing well, but if the state engineer, after a hearing, finds that circumstances in a particular instance so warrant, he may issue a permit without regard to the above limitation. The permit shall set forth such conditions for drilling, casing, and equipping wells and other diversion facilities as are reasonably necessary to prevent waste, pollution, or material injury to existing rights . . . .

Section 37–90–137(2), C.R.S.1973.

"Replacement well" is a term defined by section 37–90–103(13), C.R.S.1973:

7. For a general background on the Management Act and its interrelation with the 1969

Act, *see State ex rel. Danielson v. Vickroy, supra,* and cases cited therein.

'Replacement or substitute well' means a new well replacing an existing well, and which shall be limited to the yield of the original well and shall take the date of priority of the original well, *which shall be abandoned upon completion of the new well.* (Emphasis added).

This definition applies to all of article 90, unless the context otherwise requires. Section 37–90–103, C.R.S.1973.

The use which the water judge is to make of the state engineer's findings in evaluating a water right application involving a well is prescribed by section 37–92–305(6), C.R.S.1973, as follows:

In the case of an application for determination of a water right or a conditional water right, a determination with respect to a change of a water right or approval of a plan for augmentation, which requires construction of a well, the referee or the water judge, as the case may be, shall consider the findings of the state engineer, made pursuant to section 37–90–137, which granted or denied the well permit, and may grant a conditional decree unless a denial of such permit was justified under said section, and in case a final decree or conditional decree is granted by the court, the state engineer shall issue said permit.

The water judge must include in the decree such terms and conditions as are necessary to prevent injury. Section 37–92–305(3), (4), C.R.S.1973. We think it implicit that those terms and conditions may include those imposed for like purpose by the state engineer in issuing the well permit. *See* section 37–90–137(2), C.R.S.1973.

This review of the relevant statutory procedures and standards for obtaining a judicial determination of a water right or a conditional water right establishes the in-

terrelation of the 1969 Act and the Management Act with respect to wells. There can be no question but that "replacement well" as used in section 37–90–137(2) is a defined term in the Management Act and that the definition is supplied by section 37–90–103(13). Thus, when the state engineer issued permits for wells number 2 to 5 as replacement wells, the law recognized that the new wells would take the dates of priority of the original wells but that the old wells must be abandoned upon completion of the new. Section 37–90–103(13), C.R.S. 1973.[8]

■ The February 14, 1975, decree by which water rights were decreed to these wells also explicitly reflects that they are replacement wells. We conclude that the February 14, 1975, decree, taken together with the statutory definition of "replacement well," imposed upon Broyles the obligation to abandon the replaced wells upon completion of the replacement wells. *See Bubb v. Christensen,* Colo., 610 P.2d 1343 (1980).

■ It does not necessarily follow, however, that the old abandoned wells could never be used in the future as alternate points of diversion for the water rights decreed to wells number 2 to 5. Rather, the abandonment simply places those well locations on a par with all other possible alternate points of diversion. Before they could be so used, permits must be requested from the state engineer pursuant to section 37–90–137, C.R.S.1973 (1980 Supp.). Such permits have been obtained as to the wells replaced by wells number 2, 3, and 4. Additionally, as we shall demonstrate in section IB of this opinion, Broyles must obtain a decree for a change of water right which establishes the old wells as alternate points of diversion. It is the failure to obtain such

**8.** The characterization of the new wells as "replacements" by the state engineer in granting the permits for wells number 2 to 5, *see* n. 2, is especially significant in light of the defined term "alternate point of diversion well" found in the definition section of the Management Act, section 37–90–103(1), C.R.S.1973, and not used by the state engineer. That definition is as follows:

'Alternate point of diversion well' means any well drilled and used, in addition to an original well or other diversion, for the purpose of obtaining the present appropriation of that original well, from more than one point of diversion.

a decree which is fatal to Broyles' position on this appeal.

## B.

In the absence of a judicial decree, permitting Broyles to rely on production from the replaced wells to perfect conditional water rights decreed to the replacement wells would violate the statutory plan for effecting changes of water rights.

Section 37–92–302, C.R.S.1973 (1980 Supp.) provides a means of obtaining a judicial determination of a "change of water right," which includes a change from a fixed point of diversion to alternate or supplemental points of diversion. Section 37–92–103(5), C.R.S.1973. *See generally, Southeastern Colorado Water Conservancy District v. Rich*, Colo., 625 P.2d 977 (1981). Section 37–92–302 provides for notice of all applications for a determination of a water right or a conditional water right to be published. Section 37–92–302(3), C.R.S. 1973 (1980 Supp.). Anyone wishing to oppose the application may file a statement of opposition. Section 37–92–302(1), C.R.S. 1973 (1980 Supp.). An important basis for opposition is provided by section 37–92–305(3) of the 1969 Act, which prescribes standards guiding the water referee and water judge in their rulings:

> A change of water right or plan for augmentation, including water exchange project, shall be approved if such change or plan will not injuriously affect the owner of or persons entitled to use water under a vested water right or a decreed conditional water right. If it is determined that the proposed change or plan as presented in the application would cause such injurious effect, the referee or the water judge, as the case may be, shall afford the applicant or any person opposed to the application an opportunity to propose terms or conditions which would prevent such injurious effect.

Furthermore, as we have seen, if the change will involve construction of a well, the application must be supplemented by evidence of action by the state engineer on an application for a well permit pursuant to

section 37–90–137. Section 37–92–302(2), C.R.S.1973; *Mooney v. Kuiper*, 194 Colo. 477, 573 P.2d 538 (1978). The state engineer's findings must be considered by the water judge but do not bind him. Section 37–92–305(6), C.R.S.1973; *see Bohn v. Kuiper*, 195 Colo. 17, 575 P.2d 402 (1978).

This statutory procedure assures that all interested persons will have the ability to obtain a judicial determination whether the change would injuriously affect others, and whether conditions could be imposed which would permit the change to be accomplished while still protecting others from injury. *See* section 37–92–302, C.R.S.1973 (1980 Supp.) and section 37–92–305(3), (4), C.R.S. 1973. It also recognizes the special expertise of the state engineer with respect to wells and their effect on other water users by requiring that an applicant for a change of water right involving a new well apply for a well permit before seeking judicial approval of the change. Section 37–92–302(2), C.R.S.1973.

Broyles' position that alternate points of diversion can be utilized to make absolute a conditional water right without first obtaining judicial authorization for use of such alternate diversion points would eliminate the ability of third parties to learn of the changed diversion point, and to have the question of injurious effect of the change judicially determined. Implicit in the statutory scheme is the recognition that diversion from a point other than that decreed may result in impermissible injury to the rights of others. The state engineer's issuance of a well permit for an alternate point of diversion based on his finding that material injury would not result to the vested rights of others is only a partial answer to this concern. Third parties are entitled to notice and hearing in a change of water right proceeding under section 37–92–302, C.R.S.1973 (1980 Supp.) before judicial imprimatur is placed on the finding. To permit diversions from Broyles' replaced wells to be used to make absolute the conditional rights decreed to wells number 2 to 5 without first obtaining a decree for alternate points of diversion at the old wells would

circumvent the carefully structured statutory protections of the rights of third persons.[9] This cannot be allowed. We hold that only those diversions at the decreed point of diversion or at decreed alternate points of diversion may be utilized to make absolute a decreed conditional water right.[10]

## II.

We next consider Southeastern's cross-appeal and conclude that it is premature.

The objectors moved for a partial summary judgment denying Broyles' petition to correct the legal description of wells number 1 to 3 in the February 14, 1975, decree adjudicating water rights to those wells. The trial court denied the motion. Although it made an interlocutory ruling that the objectors' asserted basis for opposition to this portion of the petition was not well taken, it did not enter judgment granting Broyles' requested corrections, nor was it asked to do so. The trial court's purported direction of entry of judgment pursuant to C.R.C.P. 54(b) on its order denying the objectors' motion for a partial summary judgment is not effective to convert that interlocutory order into a final partial judgment.

The record does not reflect that the trial judge has made all the findings necessary to entry of judgment on Broyles' application to correct the well descriptions.

Of particular importance is that the water judge "may order such notice of any such correction proceedings as he determines to be appropriate." Section 37-92-304(10), C.R.S.1973. The record does not reveal whether the published resume described the requested corrections or whether the water judge considered the adequacy of notice by resume, *see Gardner v. State*, Colo., 614 P.2d 357 (1980), or whether he made a decision not to exercise his discretionary authority to order additional notice. For these reasons, we conclude that it would be inadvisable, even if otherwise permissible, to hold that the trial court's denial of the objector's motion for a partial summary judgment is functionally equivalent to the granting of a partial summary judgment in favor of Broyles.

We affirm the partial summary judgment entered by the water court and dismiss the cross-appeal.

---

9. The same considerations apply to well number 5. That the diversion is from a new well rather than the original replaced well is not a material distinction. The key deficiency is diversion in the absence of a judicial decree, and that deficiency is equally applicable to each of wells number 2 to 5.

10. We do not reach the question of whether any alternate point of diversion decree must include a condition limiting the combined production from the original and alternate diversion points to the demonstrated yield at the original point of diversion. We have suggested that a decree for an alternate point of diversion must be limited in quantity to the historical use at the decreed point of diversion. *Southeastern Colorado Water Conservancy District v. Rich, supra, see also Weibert v. Rothe Bros., Inc.,* Colo., 618 P.2d 1367 (1980); section 37-90-130(1), C.R.S.1973. Whether the state engineer properly granted permits to use the old wells as alternate point of diversion without limiting the combined production of each pair of wells to the amount historically produced from the respective replacement wells is also a question not now before us.