Jake O. BROYLES,
Applicant-Appellant,

v.

The FORT LYON CANAL COMPANY and Southeastern Colorado Water Conservancy District, Objectors-Appellees,

and

Robert Jesse, Division Engineer for Water Division 2, and State of Colorado Department of Natural Resources, Appellees.

Nos. 83SA351, 83SA456.

Supreme Court of Colorado,
En Banc.

Feb. 4, 1985.

Rehearing Denied March 11, 1985.

---

Fairfield & Woods, Howard Holme, Kevin B. Pratt, Denver, for objector-appellee Southeastern Colorado Water Conservancy Dist.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Paula C. Phillips, Asst. Atty. Gen., Denver, for appellee Robert Jesse, Div. Engineer for Water Div. 2.

No appearance for appellee State of Colo. Dept. of Natural Resources.

Shinn Lawyers, Carl M. Shinn, Lamar, for applicant-appellant.

Lefferdink & Davis, John J. Lefferdink, Lamar, Calkins, Kramer, Grimshaw & Harring, P.C., Wayne B. Schroeder, P.C., Bruce D. Bernard, Denver, for objector-appellee The Fort Lyon Canal Co.

LOHR, Justice.

In these consolidated cases, Jake Broyles appeals from two separate judgments of the Water Judge of the District Courts in and for Water Division 2. Both judgments arose out of the same proceeding—Broyles' 1979 application for a determination that several conditional underground water rights had become absolute by reason of completion of the appropriations, and for a quadrennial finding of reasonable diligence in the development of one of those conditional water rights to the extent that the amount conditionally decreed had not been applied to beneficial use.

In 83SA351, Broyles appeals from an order of the water judge requiring him to abandon and plug four wells. Because we find that the judge wrongly interpreted an earlier decision of this court to require that the wells be plugged, we reverse. *See Broyles v. Fort Lyon Canal Co.*, 638 P.2d 244 (Colo.1981). On remand, should the water judge determine that he has jurisdiction to consider the well-plugging matter, the judge should exercise his discretion, as directed in part III of this opinion, when deciding whether to issue an order to plug the wells.

In 83SA456, Broyles appeals from a subsequent order of the water judge granting a motion for summary judgment filed by the Southeastern Colorado Water Conservancy District. The judgment dismissed Broyles' application for quadrennial findings of reasonable diligence and cancelled

five conditional water rights decreed to certain wells in 1975.[1] We affirm this judgment, agreeing with the water judge that Broyles failed to file his application for diligence findings within the time required, and that this failure compels the cancellation of the conditional water rights.

## I.

The basic facts concerning Broyles' various water wells and absolute and conditional underground water rights appear in our earlier decision, *Broyles v. Fort Lyon Canal Co.*, and will not be repeated here. However, a recitation of additional facts appearing in the record is necessary to the resolution of these appeals.

On February 14, 1975, upon the application of Jake and Mary Broyles, the water judge decreed certain absolute and conditional water rights to five wells, all "replacement wells" as that term is defined in section 37-90-103(13), 15 C.R.S. (1973). The decree included the following language:

It is further,

ORDERED, ADJUDGED and DECREED, That as to any conditional right awarded hereunder, the owners thereof, if they desire to maintain the same, shall file an application for quadrennial finding of reasonable diligence with the water clerk of this court during the month of February 1979 and every four (4) years thereafter, until the rights are decreed final ....

Section 37-92-301(4), 15 C.R.S. (1973), requires the owner of a conditional water right to obtain a finding of reasonable diligence in the development of the proposed appropriation every four years or the conditional water right "shall be considered abandoned." *See also* §§ 37-92-302, -305(7), 15 C.R.S. (1973 and 1984 Supp.).

On December 11, 1978, the clerk for water division 2 notified the Broyles that they were required to file an application for findings of reasonable diligence during the month of February 1979 or the conditional water rights would be considered abandoned. *See* § 37-92-305(7), 15 C.R.S. (1984 Supp.). The notice was mailed by certified mail to the Broyles' last known address, in Lamar, where Mary Broyles still lived. The marriage of Jake and Mary Broyles had been dissolved after the 1975 water rights decree, and Jake Broyles no longer lived at that address. The decree, however, still reflected both names. Notice was also mailed by regular mail to Carl M. Shinn, the attorney who had represented the Broyles at the time the conditional decree was granted.

On December 13, Shinn discussed with Mary Broyles the importance of the notice and the need to file necessary proof of reasonable diligence by the end of February in 1979. Shinn requested that she advise Jake Broyles about the notice from the court. On December 15, Jake Broyles returned to Lamar from Colorado Springs, where he had been receiving medical attention, and Mary Broyles gave him the notice received from the court clerk. After December 15, Shinn discussed the notice with Jake Broyles on two separate occasions and impressed upon him the importance of filing the application for diligence findings within the required time. Broyles never authorized Shinn to file the necessary application, telling Shinn that the matter was taken care of.

An application for a quadrennial finding of reasonable diligence was not filed by the Broyles by the end of February in 1979. On March 15, 1979, the water judge for water division 2 entered an order cancelling the five conditional water rights decreed to the Broyles' wells in 1975.

On April 3, 1979, the Broyles filed a motion for relief from judgment by reason of inadvertence and excusable neglect and "for other reasons justifying relief as set forth herein," pursuant to C.R.C.P. 60(b).[2]

---

1. Although the Broyles' application did not specifically ask for quadrennial findings of reasonable diligence in the event of denial of their request that certain of their conditional water rights be decreed absolute, the parties and the trial court have treated the application as encompassing a petition for such alternative relief. We accept this construction.

2. C.R.C.P. 60(b) provides, in relevant part:
   On motion and upon such terms as are just, the court may relieve a party or his legal

In the motion, the Broyles detailed the facts as noted above and then asserted the following: Jake Broyles took care of water matters for both Jake and Mary Broyles as Mary Broyles had little knowledge regarding these matters. A poor physical condition requiring medical attention, personal stress from financial and physical problems, and the need to travel on business in January of 1979 prevented Jake Broyles from "adequately attending to his business" and left him with no recollection of receiving the notice from the court concerning the conditional water rights or of having any conversation with attorney Shinn about the matter.

On April 17, 1979, the Hon. John C. Statler, the water judge for water division 2, found that an application for quadrennial findings of reasonable diligence was not filed by the Broyles within the required time period due to inadvertence and excusable neglect. The court set aside the order cancelling the conditional water rights and allowed the Broyles additional time to file the necessary application.

On May 9, 1979, the Broyles filed a document titled Application to Make Absolute a Conditional Water Right and Application for Quadrennial Finding of Reasonable Diligence. The Fort Lyon Canal Company (Fort Lyon) and the Southeastern Colorado Water Conservancy District (Southeastern) filed statements of opposition.

On May 13, 1980, the water judge issued an order granting a motion for partial summary judgment filed by Fort Lyon and disallowing the portion of the Broyles' application seeking to make absolute the conditional water rights decreed to the replacement wells. One basis for the court's order, and the only one relevant here, was that a conditional water right decreed to a replacement well could not be made absolute by taking water from the original well (i.e., the replaced well), as Jake Broyles[3] had sought to do as to four of the wells. Judgment was made final on this order pursuant to C.R.C.P. 54(b), and Jake Broyles appealed. We affirmed, on November 16, 1981, holding that Broyles was obligated to abandon the replaced wells upon completion of the replacement wells, and that the replaced wells could not be used to make absolute the conditional water rights decreed to the replacement wells. *Broyles v. Fort Lyon Canal Co.,* 638 P.2d at 249–50. We also noted that before Broyles could use the replaced wells as alternate points of diversion for the absolute and conditional water rights decreed in 1975 for the replacement wells, he would be required to file an application and obtain an order establishing the replaced wells as alternate points of diversion for the rights decreed to the replacement wells. 638 P.2d at 249–51. *See* §§ 37–92–103(5) and –302(1)(a), 15 C.R.S. (1973 and 1984 Supp.). The proceedings continued before the water judge on Broyles' application for quadrennial findings of reasonable diligence.

Fort Lyon and Southeastern then filed motions for an order requiring Broyles to abandon and plug the replaced wells. Before the court reached a decision on these motions, Broyles instituted a separate proceeding in water division 2 in which he sought to have the replaced wells decreed as alternate points of diversion for the ab-

representative from a final judgment, order, or proceeding for the following reasons: (1) Mistake, inadvertence, surprise, or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (3) the judgment is void; (4) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (5) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1) and (2) not more than six months after the judgment, order, or proceeding was entered or taken. A motion under this section (b) does not affect the finality of a judgment or suspend its operation. This Rule does not limit the power of a court: (1) To entertain an independent action to relieve a party from a judgment, order, or proceeding....

3. Effective May 5, 1980, Mary Broyles was dismissed from the proceeding and the caption was changed to reflect that dismissal.

solute and conditional water rights decreed to the replacement wells in 1975.

On July 13, 1983, the court ordered Broyles to abandon and plug the replaced wells in accordance with Section 5 of the Rules and Regulations of the State of Colorado, Division of Water Resources, State Board of Examiners of Water Well and Pump Installation Contractors.[4] The water judge interpreted what he characterized as ambiguous language in our earlier decision and concluded that "the Supreme Court intended that the wells referred to as abandoned must be abandoned and plugged pursuant to [the administrative rules]." The court noted that although alternate-point-of-diversion well permits had been obtained by Broyles from the State Engineer and an application had been filed for a decree recognizing the replaced wells as alternate points of diversion, "the alternate points of diversion have not been decreed" and the "[a]pplicant is far from obtaining a decree."

The court directed entry of final judgment on this issue pursuant to C.R.C.P. 54(b) and Broyles appealed. 83SA351. The proceedings still continued before the water judge on Broyles' application for quadrennial findings of reasonable diligence.

On September 19, 1983, the court granted a motion for summary judgment that

had been filed by Southeastern more than three years earlier. The Hon. John R. Tracey, who had been appointed to succeed Judge Statler as the water judge for water division 2, concluded that the order of April 17, 1979, allowing Broyles to file an untimely application for findings of reasonable diligence, was issued in error. The court concluded that a finding of inadvertence and excusable neglect is not a legally sufficient basis on which to set aside an order cancelling water rights based upon a failure to file a necessary application for diligence findings. The water judge dismissed the application and again cancelled the five conditional underground water rights decreed in 1975 to Broyles' replacement wells. Broyles appealed. 83SA456.

The two appeals have been consolidated in this court. We first address the judgment dismissing the application for diligence findings and cancelling the water rights.

## II.

Section 37–92–301(4), 15 C.R.S. (1973), requires:

In every fourth calendar year after the calendar year in which a determination is made with respect to a conditional water right, the owner or user thereof, if he desires to maintain the same, shall obtain

4. The regulations of the State Board of Examiners of Water Well and Pump Installation Contractors, Division of Water Resources, are found at 2 C.C.R. 402–2 (1977). Section 5 provides, in relevant part:

(1) General:
The sealing of abandoned wells is intended to prevent contamination of ground water aquifers.
(2) Unconfined Water Wells:
(a) Small diameter wells formerly producing from unconfined material shall be abandoned by filling with sand or gravel to the static water level, then with inert materials to within 10 feet of the surface. The top 10 feet shall be filled with concrete, neat cement, or other approved material.
(b) Large diameter wells formerly producing from unconfined material shall be abandoned by filling with sand or gravel to the top of the water level, with inert material to the surface and by installing a permanent cover of adequate strength water tight at the top of the

casing. On farm lands the top 5 feet of casing shall be removed, the hole filled with sand or gravel to the top of the water level, with inert materials to within 5 feet of the surface, and shall be capped with concrete or steel 5 feet below the surface.
(3) Confined-Water Wells:
Wells formerly completed in confined and unconfined formations or in confined formations only shall be abandoned by plugging with concrete, neat cement or other approved material at the first impervious strata [sic] above each zone and cement grouted from the surface to a depth of 10 feet. No plug shall be less than 5 feet in length.
The parties appear to agree that Broyles' replaced wells are large diameter unconfined water wells on farm lands, as all the parties note that section 5(2)(b) would apply if these wells must be sealed. Authority for the promulgation of these regulations is found at section 37–91–104(1)(c), 15 C.R.S. (1973).

a finding by the referee of reasonable diligence in the development of the proposed appropriation, or said conditional water right shall be considered abandoned. The ruling of the referee and the judgment and decree of the court determining a conditional water right shall specify the month in such calendar year in which application for a quadrennial finding of reasonable diligence shall be filed with the water clerk pursuant to section 37–92–302(1).

■ In *Town of De Beque v. Enewold,* 199 Colo. 110, 606 P.2d 48 (1980), we affirmed the cancellation of a number of conditional water rights because of a failure on the part of the holders of those rights to file timely applications for quadrennial findings of reasonable diligence. *Accord Bar 70 Enterprises, Inc. v. Highland Ditch Association,* 694 P.2d 1253 (Colo. 1985); *Matter of Simineo v. Kelling,* 199 Colo. 225, 607 P.2d 1289 (1980). In *De Beque,* we noted that section 37–92–301(4) can be considered as a statute of limitations, and that a failure to file the necessary application within the period of limitation mandates cancellation of the condition-

al water right. 199 Colo. at 115–18, 606 P.2d at 51–54. Of particular importance to this appeal, we noted:

> The allegation of the River District that its failure to meet the filing requirements was the result of inadvertence, as well as the allegation that it had in fact been diligent in the development of the conditional water rights at issue, accepted by the trial court as true, were simply not germane to the issues before the trial court on the motion for summary judgment. Therefore, the trial court did not err in granting the motion for summary judgment.

199 Colo. at 120, 606 P.2d at 55. Here, the water judge should not have vacated the cancellation of Broyles' conditional water rights in April of 1979 simply on the C.R. C.P. 60(b) grounds that Broyles failed to meet the filing deadline due to inadvertence and excusable neglect.

■ As stated in *De Beque,* section 37–92–301(4) can be characterized as in the nature of a statute of limitations.[5] 199 Colo. at 117, 606 P.2d at 53. We note first that section 37–92–601, 15 C.R.S. (1973),

---

5. In *De Beque,* we characterized the filing requirement in section 37–92–301(4) as like a statute of limitations for the limited purpose of determining that the newly-enacted statute could be applied to existing rights because it allowed a reasonable period of time for the exercise or protection of those rights. 199 Colo. at 117, 606 P.2d at 53. Here, we again characterize the filing requirement as in the nature of a statute of limitations for the limited purpose of reviewing Broyles' assertion that the circumstances surrounding his untimely filing satisfy the general tolling provision provided in section 13–81–103 for statutes of limitations. It is incorrect, however, to conclude that the section 37–92–301(4) requirement for timely filings is in all respects a "statute of limitations" as that term has been construed and applied by this court. For example, in *Bar 70 Enterprises, Inc. v. Highland Ditch Association,* 694 P.2d 1253 (Colo.1985), we held that the language of section 301(4) was clear and unequivocal in requiring the cancellation of Highland's conditional water rights when Highland missed the deadline for an application for diligence findings by four days, after receiving proper notice from the court pursuant to section 37–92–305(7), 15 C.R.S. (1984 Supp.). The issue explicitly decided in *Bar 70* was that the enactment of the notice requirement did not, in and of itself, alter the requirement that a conditional water right

be cancelled when a filing is not made within the time prescribed. At 1255–56. However, we also implicitly rejected Highland's argument that Bar 70 waived the "defense" of a late filing by failing to raise the issue in a timely fashion (raising it 16 months after filing its statement of opposition and only 8 days before trial). In determining that the conditional water rights should not be cancelled, the water judge relied in part on Bar 70's delay in raising the issue. *See* at 1254–55. Generally, a party must raise as a defense at the initiation of the proceedings the failure of another party to file within the time prescribed by a statute of limitations, or the defense is waived. C.R.C.P. 8(c); *Trustees of Mortgage Trust of America v. District Court,* 621 P.2d 310, 312·n. 1 (Colo.1980); *In Re Estate of Randall v. Colorado State Hospital,* 166 Colo. 1, 7, 441 P.2d 153, 155 (1968). A failure to file an application for diligence findings within the time prescribed by section 37–92–301(4), however, may be raised at any time by any party, *see Bar 70 Enterprises, Inc. v. Highland Ditch Association,* or by the water judge on his own motion, *cf. Model Land & Irrigation Co. v. Baca Irrigation Ditch Co.,* 83 Colo. 131, 134–35, 262 P. 517, 518 (1928), at least where the issue is raised before a judgment with respect to diligence has been entered.

which relates to conditional water rights decreed under the prior Adjudication Act of 1943, contains a specific tolling provision for required quadrennial showings of reasonable diligence during "any period in which the water judge finds the applicant was prevented from filing by reason of conditions beyond his control." Section 37-92-301(4), which is applicable here and which relates to the filing of applications for diligence findings on conditional water rights decreed under the Water Right Determination and Administration Act of 1969,[6] contains no such tolling provision. When a specific conflicting tolling provision does not exist to toll a statute of limitations, and when a particular statute of limitations does not indicate otherwise, the general tolling provision in section 13-81-103, 6 C.R.S. (1973), applies. *See Sommermeyer v. Price*, 198 Colo. 548, 603 P.2d 135 (1979); *Kuckler v. Whisler*, 191 Colo. 260, 552 P.2d 18 (1976). Section 13-81-103 tolls a statutory period of limitation if within the time for asserting the right the person possessing that right is a "person under disability" and is without a legal representative. "Person under disability" means a minor, a mental incompetent or a person "under any other legal disability." § 13-81-101(3), 6 C.R.S. (1984 Supp.).

We need not decide here whether the specific tolling provision in section 37-92-601 concerning conditions beyond the control of the applicant should also apply to applicants who file untimely requests for findings of reasonable diligence pursuant to the otherwise identical requirements of section 37-92-301(4), or, instead, whether the disability standard of section 13-81-103 will operate to toll the time period in which filings under section 37-92-301(4) must be made. The record establishes that Jake

Broyles was neither suffering from a legal disability nor prevented by conditions beyond his control from filing within the required time.

Broyles argues that he was a "person under disability" within the meaning of section 13-81-101(3), 6 C.R.S. (1984 Supp.), at the time the application for diligence findings was due, and, therefore, the running of the period of limitation should have been tolled. Broyles relies on the facts averred in the motion for relief from judgment to establish his disability. He argues that this court held in *Browne v. Smith*, 119 Colo. 469, 205 P.2d 239 (1949), that a showing that one is unable to manage his affairs is sufficient to toll the statute.

Contrary to Broyles' argument, *Browne v. Smith* merely held that, while it was necessary for a claimant to prove that he was mentally incompetent, or insane, in order to toll the time required for proceeding with an action on a promissory note, it was not necessary that there have been an adjudication of insanity during that time. 119 Colo. at 471-72, 205 P.2d at 240-41.[7] To say that *Browne v. Smith* stands for the proposition that an allegation of an inability to manage one's affairs is adequate to toll the statute without proof that the inability is due to a mental disorder would be to stretch that holding beyond recognition. Here, Judge Statler, when granting the Broyles' motion for relief from judgment, simply concluded that the application was not filed due to inadvertence and excusable neglect. Judge Statler made no finding that Broyles was mentally incompetent or suffering from some other legal disability within the meaning of section 13-81-101(3), and Broyles never re-

6. The Water Right Determination and Administration Act of 1969 repealed the Adjudication Act of 1943 in its entirety. Ch. 373, sec. 20(1), 1969 Colo.Sess.Laws 1200, 1223. The 1969 Act is codified as art. 92 of title 37, 15 C.R.S. (1973 and 1984 Supp.).

7. *Browne v. Smith* concerned the interpretation and application of the predecessor to section 13-80-116, 6 C.R.S. (1984 Supp.), a tolling provision applying to certain statutes of limitations

for persons who are insane, imprisoned or absent from the United States. Section 13-81-103, relevant here, is a separate, general tolling provision for "person[s] under disability," i.e., certain minors, mental incompetents and persons under "any other legal disability." It is not clear exactly what is encompassed within the term "other legal disability." It is certain, however, that the record discloses no legal disability that prevented Broyles from filing a timely application for diligence findings.

quested the water judge to make such a finding.

■ Our review of the record indicates no disability on the part of Jake Broyles that prevented the timely filing of the application. Broyles stated that he was suffering from high blood sugar, discomfort from minor surgery, financial difficulties and stress. While we do not wish to minimize the seriousness of these problems, without more they do not establish mental incompetence or other legal disability. Furthermore, Broyles admits that he was attending to business in Indiana during the month of January—after he was notified of the necessity for filing the application for diligence findings and one month before that filing was due—and that on two occasions after December 13, 1978, his attorney advised him of the need to accomplish the filing. Finally, Broyles' wife, who was co-holder of the water rights at all relevant times and who was co-applicant for the diligence findings, had proper notice and adequate advice from legal counsel and was suffering from no apparent disability. The record contains no support for Broyles' claim that the period of limitation was tolled due to any disability on his part.

Except as embraced in his assertion that he was under a disability, Broyles does not argue that conditions beyond his control prevented him from filing his application for diligence findings within the required time period. The record does not disclose any such conditions, and the period of limitation was not tolled for that reason.

■ There is no indication that the legislature intended the standards for tolling the limitation period of section 37–92–301(4) to be *other* than the tolling provision provided in section 37–92–601 or in section 13–81–103. In particular, C.R.C.P. 60(b), relates only to relief from judgment upon a showing of inadvertence or excusable neglect, and so by its own terms does not purport to toll the period of limitation in section 37–92–301(4). *See De Beque*, 199 Colo. at 120, 606 P.2d at 55.

■ Next, Broyles asserts that *De Beque* cannot properly be applied retroactively to cancel Broyles' conditional water rights. *De Beque* was decided in 1980; Broyles filed his untimely application in May of 1979. In *De Beque*, however, we did not establish a new principle of law. Rather, we merely interpreted and applied a statute that was enacted prior to the time Broyles was required to file his application. Accordingly, any contention that *De Beque*, or the filing requirement of section 37–92–301(4), is inapplicable to this case is erroneous. *Cf. Rocky Mountain Power Co. v. Colorado River Water Conservation District*, 646 P.2d 383, 389 (Colo.1982).

Broyles argues further that it was improper for a subsequent water judge to review and reverse the order of the prior water judge allowing Broyles to file the untimely application. Broyles asserts that a district court judge does not have authority to set aside an order or judgment of another district court judge unless the original order or judgment was void for lack of jurisdiction over the parties or the subject matter.

■ An order granting a motion to set aside an order or judgment is not itself a final judgment. *General Aluminum Corp. v. District Court*, 165 Colo. 445, 439 P.2d 340 (1968); *Westerkamp v. Westerkamp*, 155 Colo. 534, 395 P.2d 737 (1964); *Schtul v. Christ*, 132 Colo. 293, 287 P.2d 661 (1955). Such an order merely sets the stage for further proceedings. Every ruling or order made in the progress of an on-going proceeding may be rescinded or modified during that proceeding upon proper grounds. The fact that a different judge is sitting does not impair the power or authority of the court to act in this manner. *See Denver Electric & Neon Service Corp. v. Gerald H. Phipps, Inc.*, 143 Colo. 530, 354 P.2d 618 (1960); *Epstein v. City & County of Denver*, 133 Colo. 104, 293 P.2d 308 (1956); *Rice v. Van Why*, 49 Colo. 7, 111 P. 599 (1910). Judge Tracey was not precluded from reconsidering Judge Statler's ruling, finding it to be in error and, in effect, rescinding it.

Finally, Broyles argues that the limitation should not be strictly applied in this case as to do so would violate equitable

concepts, citing *Klamm Shell v. Berg*, 165 Colo. 540, 441 P.2d 10 (1968), for support. In *Klamm Shell*, the plaintiff was rendered mentally incapacitated as a result of a violent assault and battery by the defendant. This court affirmed the district court's refusal to apply strictly the applicable statute of limitations—which allowed tolling only when the plaintiff was mentally incompetent at the time the cause of action accrued, i.e., when the assault occurred—and allowed the subsequent disability caused by the defendant's intentional tort to toll the statute. 165 Colo. at 546, 441 P.2d at 13. Broyles' problems do not approach the severity of those experienced by the plaintiff in *Klamm Shell*. Rather, Broyles' situation is similar to those of the Town of De Beque, the Colorado River Water Conservation District, Theodore and Madeline Simineo and the Highland Ditch Association, whose conditional water rights were cancelled because, for a variety of unfortunate reasons, they failed to file timely applications for findings of reasonable diligence. *Bar 70 Enterprises, Inc. v. Highland Ditch Association; De Beque v. Enewold; Matter of Simineo v. Kelling.*

▆▆▆ In conclusion, we hold that the water judge correctly ruled that Broyles failed to file an application for quadrennial findings of reasonable diligence in the time specified, and that such a failure mandated the cancellation of Broyles' five conditional underground water rights decreed in 1975.

## III.

We next review the order of the water judge that Broyles must abandon and plug his four replaced wells.[8] For a description of Broyles' replacement and replaced wells, *see Broyles v. Fort Lyon Canal Co.*, 638 P.2d at 245–46. Plugging these wells would involve filling them with sand or gravel and inert materials and capping the wells with five feet of concrete or steel. § 5(2)(b), 2 C.C.R. 402–2 (1977) (*see* footnote 4). The water judge issued the order because he concluded that, in our previous opinion, we imposed a requirement that the replaced wells be abandoned and plugged pursuant to the administrative regulations. The court has wrongly construed our earlier decision.

In *Broyles v. Fort Lyon Canal Co.*, we concluded that the fact that Broyles had received absolute and conditional water right decrees specifically referring to his replacement wells, when considered together with the statutory definition of "replacement well" in section 37–90–103(13), 15 C.R.S. (1973), "imposed upon Broyles the obligation to abandon the replaced wells upon completion of the replacement wells." 638 P.2d at 249. We reached this conclu-

---

**8.** An issue not raised by the parties is whether the water judge had the authority, within the context of this particular proceeding, to order Broyles to plug and cap the replaced wells. Broyles filed an application to make absolute the conditional water rights decreed to the replacement wells or for findings of reasonable diligence in the development of the appropriations conditionally decreed to these replacement wells. Once it was determined that the replaced wells could play no role in making the conditional water rights absolute, it is not clear why the status of these replaced wells could be of any more concern, or subject further to the court's authority, in this particular proceeding.

Also, it is not clear whether a private party can seek an order (by motion, claim or counterclaim) forcing another party to plug a well in accordance with the administrative rules of the state agency, as happened here. Sections 37–91–111 and –112, 15 C.R.S. (1973), provide only that criminal and injunctive sanctions are available to enforce the provisions of art. 91 of title 37, 15 C.R.S. (1973 and 1984 Supp.) (relating to the regulation of water wells), including the provisions authorizing adoption of administrative regulations. Injunctive relief may be sought by the State Board of Examiners of Water Well and Pump Installation Contractors, through the Attorney General. A private right of action is not specifically provided for in the statutes. Because of the manner in which we resolve this appeal, we need not determine the answers to these jurisdictional questions. We are aware of the continuing vitality of the issue of whether Broyles' replaced wells must be plugged and capped. In a separate proceeding, Broyles has applied for a decree to establish the replaced wells as alternate points of diversion for the absolute and conditional rights decreed to the replacement wells. While the conditional rights now have been cancelled, whether or not those replaced wells can be used as alternate points of diversion for the absolute water rights decreed to the replacement wells remains at issue.

sion as a step toward resolution of the specific issue presented in that appeal: whether Broyles could use water from the replaced wells to make absolute the conditional water rights decreed to his replacement wells. 638 P.2d at 247. We held that he could not do so absent a decree that the replaced wells were alternate points of diversion for the water rights decreed to the replacement wells. 638 P.2d at 249.

No issue was presented in that appeal concerning what had to be done with the replaced wells in the event they could not be used to make absolute the conditional water rights. Nor was this issue decided by us, except to note that the statute defining "replacement well" required that the replaced wells be "abandoned" upon completion of the replacement wells. § 37–90–103(13), 15 C.R.S. (1973).

By our prior decision, we did not intend that the water judge must order Broyles' replaced wells to be capped and plugged in accordance with the administrative regulations, as that issue was not before this court. The water judge erred in interpreting our earlier decision as such an order. Since our decision was issued, Broyles has applied for a decree authorizing the use of the replaced wells as alternate points of diversion for the replacement wells. Upon remand, and assuming that the trial court determines that it has jurisdiction to determine in this proceeding whether Broyles must plug the replaced wells at this time, *see* footnote 8, the court should exercise its own discretion—as limited by the statutes, the decisions of this court and the particular facts of this case—in deciding whether Broyles' replaced wells should be plugged according to the administrative regulations.

In 83SA456, the judgment of the District Courts in and for Water Division 2 cancelling certain conditional water rights is affirmed. In 83SA351, the judgment of those courts directing Broyles to abandon and plug certain replaced wells is reversed, and the case is remanded for further proceedings consistent with this opinion.