Concerning the Application for Water Right of: Three Peaks Water, Inc., a Colorado Corporation, in Larimer County.

**NORTHERN COLORADO WATER ASSOCIATION, Objector–Appellant,**

v.

**THREE PEAKS WATER, INC., Applicant–Appellee,**

and

**The City of Fort Collins, Objector–Appellee,**

and

**Alan Berryman, in his Capacity as Division Engineer for Water Division I, Appellee.**

**No. 92SA175.**

Supreme Court of Colorado, En Banc.

Sept. 27, 1993.

Rehearing Denied Oct. 18, 1993.

---

Fischer, Brown, Huddleson and Gunn, P.C., William R. Fischer, Fort Collins, for objector-appellant Northern Colorado Water Ass'n.

Stephen T. Williamson, Jay J. Bartlett, Louisville, for applicant-appellee Three Peaks Water, Inc.

Carlson, Hammond & Paddock, Mary Mead Hammond, Peter C. Fleming, Denver, for objector-appellee City of Fort Collins.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Patricia S. Bangert, Deputy Atty. Gen., Jennifer L. Gimbel, First Asst. Atty. Gen., Denver, for appellee Alan Berryman, Division Engineer, Water Div. No. 1.

Justice LOHR delivered the Opinion of the Court.

Northern Colorado Water Association (NCWA) brings this appeal, challenging those portions of a judgment and decree entered by the District Court for Water Division 1 (water court) under which a conditional water right decreed to a structure known as Well No. 8 was made absolute for municipal purposes and diligence was found in the development of that same conditional water right for irrigation purposes.[1] NCWA asserts that in determining

---

1. The City of Fort Collins intervened in this action at trial in opposition to the application and has entered an appearance on appeal. In addition, pursuant to C.A.R. 1(e), the Colorado Attorney General entered an appearance on appeal on behalf of the Division Engineer for Water Division 1. Neither of these parties, however, either filed briefs or presented oral argument in this court.

Our jurisdiction over this case is provided by § 13–4–102(1)(d), 6A C.R.S. (1987), which excludes from the jurisdiction of the court of appeals final judgments of district courts in

that the conditional water right decreed to Well No. 8 had been developed with reasonable diligence and had been applied to beneficial use for municipal purposes, the water court improperly attributed to Well No. 8 the production of water from a different well and that, consequently, the conclusions underlying the court's judgment and decree cannot stand. We agree that the court erred and therefore reverse its judgment insofar as it pertains to Well No. 8 and remand the case for further proceedings so that the court can determine whether reasonable diligence was exercised in developing the conditional water right for irrigation purposes.

## I

This case arises out of an application that a well owner filed with the water court in December 1988 for a determination that conditional water rights previously decreed to three of eleven wells that it owned had become absolute, or in the alternative, for a determination of reasonable diligence in the development of those conditional water rights. The wells involved in this case have been transferred several times, both before and during the water court proceedings, and are presently owned by Three Peaks Water, Inc. (Three Peaks), which was substituted as the applicant in this

case by court order prior to trial. We begin by describing the somewhat complicated history of the wells, as an understanding of that history is necessary to an analysis of the issues before us.

■ On December 26, 1980, the water court decreed underground water rights to eleven wells, known as the Busteed Wells Nos. 1–11, which are located in Larimer County, Colorado, near the Wyoming border. The wells are in the South Platte River drainage system and were decreed rights to withdraw tributary groundwater for either irrigation or stockwatering purposes, as specified in the decree. Eight of the eleven wells were decreed absolute water rights, whereas the remaining three, which are the subjects of the application now before us, were decreed conditional water rights.[2]

The specific well at issue here, Well No. 8, is a hand-dug, uncased well that has never produced water. Well No. 8 was decreed a conditional water right to produce 0.268 cubic feet per second (cfs) of water for irrigation purposes. The right had a February 21, 1951, date of appropriation and was to be developed for the irrigation of seventy-eight acres of surrounding land area.[3] The water rights decreed to

"[w]ater cases involving priorities or adjudications." *See also* C.A.R. 1(a)(2).

**2.** We use the term "absolute water right" in reference to a "water right," which § 37–92–103(12), 15 C.R.S. (1990), defines as "a right to use in accordance with its priority a certain portion of the waters of the state by reason of the appropriation of the same," and to distinguish it from a "conditional water right." A "conditional water right" is defined as "a right to perfect a water right with a certain priority upon the completion with reasonable diligence of the appropriation upon which such water right is to be based." § 37–92–103(6). "A conditional water right is established upon the concurrence of an intent to appropriate and the performance of overt acts in furtherance of that intent," commonly referred to as a "first step." *Public Serv. of Colo. v. Board of Water Works,* 831 P.2d 470, 476 (Colo.1992); *accord e.g., City of Thornton v. City of Fort Collins,* 830 P.2d 915, 924–25 (Colo.1992). So long as a conditional right is developed with reasonable diligence, upon completing the appropriation by applying water to beneficial use the holder of the right

will be entitled to an appropriation date that relates back to the date of the "first step." *Public Serv. Co.,* 831 P.2d at 475–76; *City of Thornton,* 830 P.2d at 924. "Conditional water right decrees are designed to establish that the 'first step' toward the appropriation of a certain amount of water has been taken and to recognize the relation back of the ultimate appropriation to the date of that first step." *City of Aspen v. Colorado River Water Conservation Dist.,* 696 P.2d 758, 761 (Colo.1985).

**3.** Wells No. 3 and No. 4 were also the subject of the application to make conditional water rights absolute or, in the alternative, to obtain a finding of reasonable diligence that underlies this appeal. In the 1980 decree, conditional water rights for the purpose of irrigating nearby lands were determined with respect to each of those wells. In its March 12, 1992, judgment and decree, the water court found that diligence had not been shown in the development of the conditional water rights and therefore concluded that the rights were abandoned. The court's findings and conclusions with respect to these wells are not challenged in this appeal.

three other Busteed Wells located near Well No. 8 are also relevant to this appeal. The first of these wells, Well No. 5, was decreed an absolute water right in the amount of .0446 cfs for stockwatering purposes. In addition, Well Nos. 2 and 6 were decreed absolute water rights for irrigation purposes.[4] The central issue raised in this appeal is whether water that was produced from Well No. 5 and subsequently applied to beneficial use for municipal purposes can be attributed to Well No. 8 so as to make the conditional water right of Well No. 8 absolute for such purposes. Resolution of this issue depends in part on the effect of several events, which we describe below, on the rights originally recognized in the 1980 decree.

In 1962, NCWA was formed to supply potable water to rural residents in northern Colorado for domestic and municipal purposes. Although NCWA had two wells of its own in the same area as the Busteed Wells, it sought an additional source of water to meet the demands of its customers. It therefore leased Well No. 5 from a predecessor to Three Peaks and began delivering water produced from that well to its customers for municipal purposes.[5] Because neither Well No. 5 nor any other of the Busteed Wells had been decreed water rights for municipal purposes, the State of Colorado brought administrative proceedings in the early part of 1981 challenging this use of the water and eventually instituted an action in the water court, seeking judicial determination of the well owners' diligence in bringing the wells into compli-

ance with applicable rules and regulations. This action resulted in a March 19, 1982, order which allowed the eleven Busteed Wells to continue to operate and also allowed water produced from Well No. 5 to be used for municipal purposes. This municipal use was subject to certain conditions, however, one of which provided that "Well No. 5 may pump no more than 300 acre-feet in any one year."

On June 30, 1981, during the pendency of the State's action, an application for change of water rights was filed in the water court for the eleven Busteed Wells, in part to provide for the municipal use of the water that was occurring under NCWA's lease. The application was subsequently withdrawn for seven of the wells but continued to be prosecuted for Wells No. 2, 5, 6, and 8. The specific changes sought in that case included a change in the type of use for Wells 2, 6, and 8 from irrigation to irrigation and year-around municipal use, a designation of Well No. 5 as an alternate point of diversion for Wells 2, 6, and 8, and a designation of Wells 2, 6, and 8 as alternate points of diversion for each other. As will be shown to be critical to resolution of the case now before us, the court did not enter a decree in the change of water rights proceeding until December 29, 1988. The provisions contained in that decree are detailed below.

The application for change of water rights was considered first by the Water Referee for Water Division No. 1, who held a hearing on April 30, 1984, and issued a

---

**4.** The following table summarizes the water rights decreed to each of the wells pertinent to this appeal:

| Structure | Status | Amount (cfs) | Purpose | Appropriation Date |
| --- | --- | --- | --- | --- |
| Well No. 2 | Absolute | 2.444 | Irrigation | Sept. 15, 1969 |
| Well No. 5 | Absolute | .0446 | Stockwatering | July 17, 1970 |
| Well No. 6 | Absolute | 2.0 | Irrigation | Aug. 26, 1969 |
| Well No. 8 | Conditional | .268 | Irrigation | Feb. 21, 1951 |

**5.** Neither a copy of the lease nor a complete description of its provisions is contained in the record. However, the parties' briefs on appeal and the limited testimony at trial indicate that shortly after the water court granted the application for determination of rights for the Busteed Wells in 1980, NCWA entered into a five-year lease with the entity that owned those wells at that time for 300 acre-feet of water per year. NCWA apparently continued to lease Well No. 5

from subsequent owners of the Busteed Wells, but at some point the terms were changed so that rather than purchasing a designated amount of water each year, it received water on an "as-used" basis. NCWA no longer leases Well No. 5.

ruling on April 14, 1988. In that ruling, the referee determined that approval of the changes requested in the application would not materially injure others entitled to use water under water rights or decreed conditional water rights so long as the wells were operated in compliance with certain conditions. In particular, the referee determined that the changes would not result in injury if none of the water rights was used for more than one decreed purpose during any given year, if production from Well No. 5 was limited to 300 acre-feet per year and to a rate of 1.444 cfs, if the municipal use of water from Wells 2, 6, and 8 was limited to certain specified amounts representing the average annual consumptive use of water for irrigation purposes historically associated with Wells 2 and 6 and contemplated for Well No. 8, and if Well No. 5 was used as an alternate point of diversion only as long as NCWA's lease of that well remained in effect. The referee's ruling also required the owner of the Busteed Wells to install and maintain recording devices as required by the division engineer, to institute an accounting system for its water diversions, and to provide the division engineer annually with notice of the use it intended to make of the water rights for Wells 2, 5, 6, and 8 in each upcoming year. The water court confirmed the referee's determinations and, on December 29, 1988, incorporated the ruling into a judgment and decree.

In addition to the State's action against the owners of the Busteed Wells and the proceedings in the change of water rights application, the entity that owned the Busteed Wells in December 1984 filed at that time an application for findings of reasonable diligence in the development of the conditional water rights decreed to Wells 3, 4, and 8. In a May 10, 1988, ruling, the water referee determined that diligence

had been shown and that the conditional rights decreed to those three wells could continue until December 1988, by which time the well owner was required either to show that the conditional water rights had become absolute or to submit another application for findings of reasonable diligence.[6] On June 29, 1988, the district court confirmed the referee's ruling and made it a judgment and decree of the court.

In accordance with the diligence requirements set forth in that June 29, 1988, decree, Three Peaks' predecessor in interest filed an application on December 30, 1988, for a determination that the conditional water rights decreed to Wells 3, 4, and 8 had been made absolute or, in the absence of such a determination, for findings of reasonable diligence in the development of those conditional water rights. It is that December 1988 application that underlies this appeal. Both NCWA and the City of Fort Collins filed statements of opposition to the application,[7] and the water court held a trial on November 18, 1991. On March 12, 1992, the court entered a judgment and decree in which it denied the application with respect to Wells 3 and 4 because it found that the conditional water rights decreed to those wells had been abandoned for lack of diligence in their development. That ruling is not challenged on appeal. *See supra* note 3. With respect to Well No. 8, however, the court determined that the conditional water right decreed to that well in 1980 had been made absolute for municipal purposes in the amount of 78 acre-feet per year. In reaching this conclusion, the court found that during the December 1984 to December 1988 diligence period, and more specifically in 1985, 300 acre-feet of water had been produced from Well No. 5 and applied to municipal use. It then attributed at least 78 acre-feet of this production to Well No.

**6.** At the time the referee issued this May 1988 ruling, the owners or users of conditional water rights were statutorily required to obtain quadrennial findings of reasonable diligence in the development of their proposed appropriations so as to maintain the conditional rights and prevent them from being deemed abandoned. *See* § 148–21–17(4), 7 C.R.S. (1963 & 1973 Supp.). Under the present statute, findings of

diligence must now be sought every sixth calendar year. *See* § 37–92–301(4), 15 C.R.S. (1990).

**7.** The City of Fort Collins did not initially appear in the case, but after it acquired land and water rights in the vicinity of the Busteed Wells it was allowed to intervene and file a statement of opposition.

8 and on that basis concluded that the appropriation for municipal purposes had been completed with reasonable diligence. In addition, the court also determined in its judgment and decree that the conditional right originally decreed to Well No. 8 should be continued in effect for irrigation purposes because reasonable diligence had been exercised in completing the appropriation for those purposes.

## II

On appeal, NCWA challenges both the ruling that the conditional water right for Well No. 8 had become absolute for municipal purposes and the finding of reasonable diligence with respect to that conditional right for irrigation purposes. We address each of its challenges in turn.

## A

■ NCWA first asserts that the water court erred when it attributed the production in 1985 of 78 acre-feet of the 300 acre-feet of water produced from Well No. 5 and the subsequent use of that water for municipal purposes to Well No. 8 so as to conclude that the conditional water right decreed to Well No. 8 had been perfected into an absolute water right for municipal purposes. NCWA does not dispute the principle confirmed by our decision in *Broyles v. Fort Lyon Canal Co.*, 638 P.2d 244 (Colo.1981), that a conditional water right may be made absolute by diverting water through an alternate point of diversion. It contends, however, that a conditional right can be credited with diversions from a source different from that originally decreed only after the new source is decreed as an alternate point of diversion. Because no decree establishing Well No. 5 as an alternate point of diversion for Well No. 8 had been entered at the time the 300 acre-feet of water was withdrawn and sold for municipal purposes, NCWA argues that this diversion and application to beneficial use could not be used to show that the conditional water right associated with

Well No. 8 had been completed. To support its argument, NCWA relies on our statement in *Broyles* that "only those diversions at the decreed point of diversion or at decreed alternate points of diversion may be utilized to make absolute a decreed conditional water right." *Id.* at 251.

The water court recognized our decision in *Broyles* but in decreeing the conditional water right for Well No. 8 absolute for municipal purposes, interpreted our requirement of a judicial decree as being premised on the policy of affording potential objectors with notice and an opportunity to be heard on the issue of whether a change in a point of diversion should be allowed. Assuming that satisfaction of these two criteria was sufficient to meet the requirement of *Broyles* and finding that they had been satisfied in this case by virtue of the action previously brought by the State and by the proceedings on the application for change of water rights, the court ruled that Well No. 5 could be considered as an alternate point of diversion for Well No. 8. Specifically, the court stated:

> to the extent notice of the use of alternate points of diversion is required, notice has been given by the application in [the change of water rights case]. Said case was considered prior to and during the diligence period at issue. The applicant had to show a lack of injury in said case. In addition, the use of Well No. [5] was approved by the Water court in [the State's action against the previous owners of the Busteed Wells].

We assume for purposes of analysis that the water court correctly determined that interested persons were given adequate notice of the proposal to use Well No. 5 as an alternate point of diversion when the application for a change of water rights was filed in June of 1981 [8] and that they had an opportunity to present any evidence of injury at the time the referee heard that case on April 30, 1984. It is undisputed, however, that a decree approving the proposed changes of water rights did not issue until

---

8. NCWA does not assert that the notification procedures contained in § 37–92–302(3) were not complied with in the change of water rights

action. NCWA even agreed at trial that the notice contemplated by *Broyles* was provided by the procedures followed in the change case.

December 1988, so that at the time when Well No. 5 produced 300 acre-feet of water in 1985, that well had not been judicially established as an alternate point of diversion. In order to assess the propriety of the water court's ruling that notice and an opportunity for a hearing were sufficient to satisfy the requirements of *Broyles*, we review our decision in that case.

In *Broyles*, a well owner applied to have conditional water rights decreed to several replacement wells made absolute. Prior to his application, the owner, Broyles, had obtained permits from the state engineer authorizing him to drill these wells as replacements for six original wells and had also obtained a decree establishing absolute and conditional water rights for those replacement wells. *Broyles*, 638 P.2d at 245. In support of his application to make the conditional rights absolute, Broyles attempted to combine the production from his original wells with the production from his replacement wells to show that he had pumped the total amounts provided for in his decree. He argued that the replacement wells could be credited with production from the original wells because the state engineer had issued permits authorizing use of the original wells as alternate points of diversion.

We rejected Broyles' argument for the reason that regardless of whether he was permitted by the state engineer to attribute diversions from his original wells to the rights of his replacement wells, he had not obtained a judicial determination that the original wells could operate as alternate points of diversion. We specifically stated that "in the absence of a judicial decree recognizing the replaced wells as alternate points of diversion for the respective replacement wells, production from the replaced wells cannot be relied on to make absolute the conditional water rights decreed to the replacement wells." *Id.* at 247. Because Broyles had not obtained such a decree, his original wells were deemed abandoned by virtue of the defini-

tion of "replacement wells" contained in section 37–90–103(13), 15 C.R.S. (1973)[9]. As a result, those well locations were considered "on a par" with any other potential alternate point of diversion, and production from such wells could not be used to perfect conditional water rights with different decreed points of diversion. *Id.* at 248–49.

Thus, although we implicitly held in *Broyles* that production of water from an alternate point of diversion may be used to make absolute a conditional water right at another location, it is clear that there must first be a decree establishing that new source as an alternate point of diversion. This requirement, we said, ensures that interested persons receive notice of a proposal to change a diversion point and an opportunity to obtain a judicial determination on "whether the change would injuriously affect others, and whether conditions could be imposed which would permit the change to be accomplished while still protecting others from injury." *Id.* at 250. This statement reflects that the policy reasons for requiring a judicial determination of a source as an alternate point of diversion are more extensive than ensuring that interested persons are provided with notice of a proposed change in a point of diversion and an opportunity to be heard on whether such change ought to be approved. These two purposes are part of the rationale of *Broyles*, but we are satisfied that the requirement of a decree serves the added purpose of guaranteeing, through a final court ruling that either denies a proposed change in a diversion point or grants the change subject to specified terms and conditions, that other rights will not be injured by diversions of water from an undecreed alternate point.

That a court decree provides this additional protection is confirmed by section 37–92–305(3), which states that a court may approve a change of water right only if the change "will not injuriously affect the owner of or persons entitled to use

---

9. § 37–90–103(13) provides:

"Replacement or substitute well" means a new well which replaces an existing well and which shall be limited to the yield of the

original well and shall take the date of priority of the original well, which shall be abandoned upon completion of the new well.

water under a vested water right or a decreed conditional water right." *See also Orr v. Arapahoe Water and Sanitation Dist*, 753 P.2d 1217, 1223 (Colo.1988) ("Before the water court may grant an application for a change in the point of diversion, the applicant must demonstrate that the proposed change will not injuriously affect the vested rights of other water users."). Under Section 37–92–305(3), where there is a determination that a proposed change would have an injurious effect, both the applicant for the change and any person opposing the application must be allowed "an opportunity to propose terms or conditions which would prevent such injurious effect." Then, provided that the proposed conditions are sufficient to prevent injury, the court can incorporate those conditions into a final decree approving the change. *Matter of Application for Water Rights of Certain Shareholders in Las Animas Consol. Canal Co.*, 688 P.2d 1102, 1108–09 (Colo.1984).

▮ Both our decision in *Broyles* and these statutory requirements confirm that although notice of a proposed change in a diversion point and an opportunity to be heard on whether such a change should be approved allows interested persons to present their claims of injury to a court, it is only through the incorporation of necessary protective conditions into a final decree that such persons are actually protected from potential injury if the application is to be granted.[10] For this reason, we believe the water court in the present case read *Broyles* too narrowly when it assumed that the requirement of a judicial decree is sufficiently served by a showing of notice and a hearing. We therefore reject the determination, implicit in the water court's ruling, that a conditional water right may be made absolute by application of water to beneficial use through an undecreed alternate point of diversion. As was the case in *Broyles*, it is the failure to obtain such a decree that is fatal to the application to make the conditional water right absolute. *See Broyles*, 638 P.2d at 249–50.[11]

▮ We conclude that in the absence of a decree establishing the conditions under which Well No. 5 could be used as an alternate point of diversion without causing injury to other rights, production from that well could not be allocated to another diversion point for the purpose of making absolute a conditional water right with a decreed point of diversion at that other point. We therefore reverse that portion of the district court's judgment and decree mak-

10. The present case is illustrative. In the December 29, 1988, change of water rights decree, in order to prevent injury to others the court set forth conditions prohibiting multiple purpose usage within a single year, limiting the quantity and rate of production from Well No. 5, limiting municipal use from Well No. 8 and others to historical consumptive use, and limiting the use of Well No. 5 as an alternate point of diversion for Well No. 8 to the duration of NCWA's lease.

11. Three Peaks asserts on appeal that after the hearing in 1984, the referee orally approved the application for a change of water rights and in so doing imposed terms and conditions to prevent injury to other rights. The record, however, contains no evidence of any such ruling. Moreover, because the statute makes clear that decisions of a water referee are subject to review by a district court, *see* § 37–92–304(5); *Gardner v. Enewold*, 200 Colo. 221, 225, 614 P.2d 357, 359 (1980), a ruling by a referee does not have the legal effect of binding persons to the terms and conditions contained therein unless and until it is made a judgment and decree of the court. We thus reject Three Peaks' asser-

tion that the referee's oral ruling satisfied the criteria of *Broyles* so that Well No. 8 could be credited with the production of water from Well No. 5.

Nor can the March 1982 order of the water court in the State's action against the owners of the Busteed Wells, which authorized use of water pumped from Well No. 5 for municipal purposes, be considered sufficient to meet the requirement in *Broyles*. Not only was that action not an adjudication of water rights to which NCWA, as a nonparticipant, could be bound, *cf. City of Westminster v. Church*, 167 Colo. 1, 7, 445 P.2d 52, 54 (1968) (party not entering appearance in change of point of diversion proceeding was an interested party by virtue of ownership of potentially affected water rights and applicant's compliance with statutory procedures for notice, and was therefore bound by the decree), but by its own terms the order was temporary and remained in effect only until the application for change of water rights was adjudicated. The order therefore cannot be accorded the same status as a judicial decree required by *Broyles*.

ing absolute for municipal purposes the conditional water right decreed to Well No. 8.[12]

## B

We consider next NCWA's assertion of error with respect to that portion of the water court's judgment and decree continuing the conditional water right decreed to Well No. 8 for irrigation purposes. NCWA contends that there was no competent evidence presented at trial to support the court's finding that the "applicant has been diligent in the application of water to beneficial use from said well for irrigation purposes and that [the] conditional decree should be continued as to such use."

As set forth in section 37–92–301(4), a holder of a conditional water right is statutorily required to obtain findings of reasonable diligence periodically in order to prevent the right from being deemed abandoned. To obtain such a finding, the holder of the right must prove continuous, project-specific effort commensurate with the holder's capabilities toward development of the conditional right. *Trans–County Water, Inc. v. Central Colo. Water Conservancy Dist.*, 727 P.2d 60, 64 (1986). Whether reasonable diligence has been

shown is an ad hoc factual question for the trial court to resolve by examining all relevant evidence, which may include factors such as the size and complexity of a project, the applicant's economic capabilities, and the existence of any outside causes of delay in development. *Id.; Colorado River Water Conservation Dist. v. City and County of Denver*, 640 P.2d 1139, 1141–42 (1982). Because the diligence determination is based solely on the resolution of factual issues presented in a particular case, a trial court's findings are binding on appeal so long as they are supported by competent evidence in the record. *Colorado River Water Conservation Dist.*, 640 P.2d at 1142–43; *Orchard Mesa Irrigation Dist. v. City and County of Denver*, 182 Colo. 59, 63–64, 511 P.2d 25, 27 (1973).

In the present case, the water court did not rely on evidence relating to prospective irrigation use to determine that Three Peaks proved reasonable diligence in developing the conditional water right decreed to Well No. 8 for irrigation purposes. At the close of trial the court stated that "[t]he only evidence that we've had here today is that [the water has] been applied to municipal use." Although Three Peaks agreed that none of the water withdrawn

---

12. In addition to NCWA's argument that the conditional water right for Well No. 8 could not be made absolute by virtue of production from Well No. 5 in the absence of a judicial decree establishing Well No. 5 as an alternate point of diversion, at trial the City of Fort Collins contested the allocation of the 300 acre-feet diversion from Well No. 5 to Well No. 8 on the separate ground that there was no basis on which to justify attribution of that water to Well No. 8's conditional priority right rather than to the absolute priorities of other wells. As a basis for its argument, Fort Collins focused on the fact that the December 1988 decree in the change of water rights case established Well No. 5 as an alternate point of diversion for Wells 2 and 6, both of which had been decreed absolute water rights for irrigation purposes in 1980, as well as for Well No. 8. It then contended that the 300 acre-feet production from Well No. 5 should have been assigned to fulfill the amounts decreed absolute to Wells 2 and 6 before any amounts could be attributed to development of the conditional right decreed to Well No. 8.

In contrast, Three Peaks argued that the production should be allocated first to Well No. 8, as the well with the most senior right, and then

to satisfy any unfulfilled diversions allowable under more junior rights. The water court did not explicitly determine the proper allocation procedures for this water but stated only that "there was enough pumping which occurred that can be attributed to all three of these wells." Fort Collins has not pursued its argument on appeal, and the issue of whether allocation should be based on seniority or on the absolute versus conditional status of a right is not raised by either NCWA or Three Peaks, and is therefore not before us for review.

Furthermore, in light of our conclusion that the water court erred in its interpretation of *Broyles*, we need not address the additional argument that NCWA raises on appeal challenging the sufficiency of the evidence presented at trial to prove that the well owners intended to divert water based on the priority right of Well No. 8 through Well No. 5.

Finally, our conclusion on the *Broyles* issue makes it unnecessary to address the effect of the fact that the conditional water right for Well No. 8 did not include municipal use at the time of the production from Well No. 5 upon which Three Peaks relies to make that conditional water right absolute for municipal purposes.

from Well No. 5 and attributed to Well No. 8 had been put to use for irrigation purposes, it argued that this conditional right should not be deemed abandoned for such purposes because exercise of the right for irrigation usage was effectively precluded by virtue of the lease with NCWA and the limiting conditions under which the wells could operate. Specifically, Three Peaks explained that the March 1982 order entered in the State's action against the previous Busteed Well owners limited the production from Well No. 5 to 300 acre-feet per year and that a condition of the referee's ruling in the change of water rights case prevented water rights decreed to Well No. 8 from being used for more than one purpose during any given year. Asserting that the full 300 acre-feet that could be produced was applied to municipal use to satisfy the lease obligation to NCWA, Three Peaks argued that the water could not have been applied to irrigation.

The record shows that the water court relied on this argument when it determined that the conditional right for irrigation had been exercised with reasonable diligence. Based on our conclusion above, however, that allocating to Well No. 8 the production from Well No. 5 was improper in the absence of a decree establishing Well No. 5 as an alternate point of diversion, evidence pertaining to the use of the water withdrawn from Well No. 5 could not support a finding of diligence in the development of the conditional water right decreed to Well No. 8. We therefore reverse the water court's judgment and decree with respect to the statutorily required diligence determination.

NCWA argues that there is no evidence to support a finding of diligence in development of the proposed appropriation for irrigation use. We believe this contention should first be evaluated by the water court in light of the principles set forth in this opinion. The case must be remanded for that purpose.

### III

We hold that before a conditional water right can be developed and exercised by a diversion of water from a point different from that decreed, there must be a judicial decree establishing the new source as an alternate point of diversion. In this case, the water court erred in determining that the production of water from Well No. 5 could be attributed to Well No. 8 for purposes of making a conditional water right decreed to Well No. 8 absolute for municipal use and proving reasonable diligence in developing that same conditional right for irrigation usage. We therefore reverse those portions of the judgment and decree entered on March 12, 1992, that pertain to Well No. 8 and remand this case for further proceedings on whether reasonable diligence was exercised in developing that conditional water right for irrigation purposes.

