2017 CO 43

**SELECT ENERGY SERVICES, LLC, a Delaware limited liability company, Plaintiff–Appellee,**

and

**Division Engineer for Water Division No. 1, Appellee Pursuant to C.A.R. 1(e),**

v.

**K-LOW, LLC, a Louisiana limited liability company, Defendant–Appellant,**

and

**Faith Tabernacle Church, Inc., a Colorado corporation, Defendant–Appellee.**

**Supreme Court Case No. 16SA166**

Supreme Court of Colorado.

May 15, 2017

Attorneys for Plaintiff–Appellee: Cyran Water Law LLC, John J. Cyran, Denver, Colorado

Attorneys for Defendant–Appellant: The Askman Law Firm, LLC, David F. Askman, Michael M. Frandina, Denver, Colorado, RJB Lawyer, LLC, Robert J. Bruce, Denver, Colorado

Attorneys for Appellees Pursuant to C.A.R. 1(e): Cynthia H. Coffman, Attorney General, Ema I. G. Schultz, Assistant Attorney General, Denver, Colorado

No appearance on behalf of Defendant–Appellee.

■

JUSTICE HOOD delivered the Opinion of the Court.

¶1 Select Energy Services, LLC, hopes to run a water pipeline across an old, partly destroyed irrigation ditch that meanders alongside the South Platte River near Kersey. At the moment, however, it cannot. An easement arising from a water right long associated with that ditch stands in its way. Wielding that easement, K-LOW, LLC has attempted to block Select's pipeline as a trespass. Yet, because the water right supporting the easement recently changed, K-LOW faces its own difficulty: its easement may no longer exist. Whether the easement exists turns on the scope of the underlying water right.

¶2 Originally, the decree recognizing that right diverted water from a headgate on the South Platte and channeled it down the ditch from which the right's owner released it for irrigation. More recently, though, a change to the right now requires its owner to divert South Platte waters through a pump downstream from the old headgate and beyond the end of the ditch. The parties to this case disagree about whether that change also eliminated any right to divert water from the old ditch but do agree that our answer to that question will decide the viability of K-LOW's trespass claim. Absent that water right, K-LOW's trespass claim fails.

¶3 While these broader facts are helpful to an understanding of the parties' objectives, our task is simply to review the water court's adjudication of the water right. That task, and our conclusion, are much more straightforward. The water court found no right to divert water from the ditch, and we agree with its determination. Because, by its plain language, the decree defining the water right allows its holder to divert water only at the pump downriver from the disputed ditch, we conclude the decree does not include a right to divert water from that ditch. We therefore affirm the water court's judgment.

## I.  Facts and Procedural History

¶4 At issue are two water decrees entered a century apart: a 1914 decree establishing a right to divert water from the South Platte River that was then conveyed through the Sterling Drain and Seepage Ditch ("SD&SD"), and a 2014 decree relocating the point of diversion for that right from a headgate on the South Platte to a pump farther downstream. The latter decree reflects a change made pursuant to Colorado's simple change statute, section 37-92-305(3.5), C.R.S. (2016) (alternatively, "simple change statute").

¶5 The 1914 decree granted Asa Sterling 28.0 cubic feet of water per second ("c.f.s."), absolute, for the irrigation of 300 acres, with an appropriation date of December 8, 1893. That decree specified, by legal description, a right to divert South Platte River waters at a headgate on that river. And in addition to identifying the South Platte as a source of supply, the 1914 decree also noted the SD&SD right "takes its supply of water … from seepage and waste waters coming … from the Plumb drain ditch and other accretions along its course."

¶6 Faith Tabernacle Church later obtained the SD&SD right from Sterling's successors and in 2014 applied to move the right's diversion point to a pump on Faith's property, downstream from both the original headgate and the terminus of the ditch. Faith sought that change under the recently enacted simple change statute, which creates a simpler process for moving a surface point of diversion but prohibits combining that change with any other change to the water right. § 37-92-305(3.5). After reviewing the application, the Division Engineer worried Faith might not own the entire water right and asked Faith whether it was seeking to change either a portion of the right (which the engineer concluded was not permissible under the simple change statute) or the entire right. In response, Faith clarified that (1) it owned the entire water right and (2) it was seeking to change the point of diversion for the entire right.

¶7 The water court approved the application and entered the 2014 decree. That decree memorializes the change in the right's

surface diversion point from the headgate to the downriver pump. It provides that Faith may divert no more than 28.0 c.f.s., absolute, for the irrigation of 300 acres and retains the 1914 decree's priority date as well. The 2014 decree further specifies that the source for the right is surface water from the South Platte River and notes, "The [1914] decree also adjudicates the Plumb Drain Ditch and other accretions as sources of supply for the SD&SD."

¶8 After changing the point of diversion, Faith quit-claimed to K-LOW whatever property interest and rights it may have retained in the ditch itself—specifically, "all right to access and use the Ditch for the conveyance of the [SD&SD right], for maintenance and operations, and all other purposes incidental or appurtenant thereto." Faith expressly retained ownership of the SD&SD right itself, and, setting aside the disputed easement and water right, neither Faith nor K-LOW now holds a property interest in the ditch or the land it crosses.

¶9 Quit-claim deed in hand, K-LOW confronted Select about a pipeline the latter had laid across the ditch. Select declined to remove the pipeline, and K-LOW, relying on its easement, filed a trespass claim in the Weld County District Court. At the parties' joint request, the court dismissed that action, and Select filed a new suit in the water court for Water Division No. 1 seeking a declaratory judgment as to whether the 2014 decree extinguished the right to divert water from the ditch. Select then moved for partial summary judgment on that determination. Neither party argued that a factual dispute precluded summary judgment, and instead, each introduced extrinsic evidence to support its interpretation of the 2014 decree.

¶10 The water court granted Select's motion for partial summary judgment. The court found that Faith made clear in its application that it sought to move the diversion point for the entire water right. The court also noted that, assuming all of the sources of supply named in the 1914 and 2014 decrees returned to the South Platte above the new pump location, all original sources of the SD&SD right would be available at the new location. Thus, it concluded that because

the 2014 decree moved the right's only diversion point to the pump on the South Platte, there remained no independent right to divert seepage, waste waters, or accretions elsewhere. Accordingly, the water court found no right to divert water from the SD&SD and granted Select's motion for partial summary judgment.

¶11 K-LOW appealed from that judgment.

## II. Standard of Review and Rules of Decree Interpretation

¶12 This court reviews a grant of summary judgment de novo, and all doubts as to the existence of a triable issue of fact must be resolved against the moving party. W. Elk Ranch, L.L.C. v. United States, 65 P.3d 479, 481 (Colo.2002). We also review de novo the water court's interpretation of a water decree. Burlington Ditch Reservoir & Land Co. v. Metro Wastewater Reclamation Dist., 256 P.3d 645, 661 (Colo.2011).

¶13 When interpreting a water decree, this court looks first to the plain language. City of Golden v. Simpson, 83 P.3d 87, 93 (Colo.2004). The decree should be "complete and certain in itself," Hinderlider v. Canon Heights Irrigation & Reservoir Co., 117 Colo. 183, 185 P.2d 325, 327–28 (1947), and the "asserted right must be found in the decree or result from a proper and legal construction thereof," Grand Valley Water Users Ass'n v. Busk-Ivanhoe, Inc., 2016 CO 75, ¶ 53, 386 P.3d 452, 466 (quoting Orchard City Irrigation Dist. v. Whitten, 146 Colo. 127, 361 P.2d 130, 135 (1961)). Only if the meaning of the decree is ambiguous should the court look to extrinsic evidence. Simpson, 83 P.3d at 93.

## III. Analysis

¶14 Does the 2014 decree expressly recognize a right to divert water from the ditch? Should it be construed to do so? In answering those questions, we look first to the decree's plain language. The 2014 decree identifies a single point of diversion—the pump on the South Platte. It does not recognize a right to divert water from the ditch. Because the decree is unambiguous, we need

not look to extrinsic evidence to clarify its meaning.

¶15 Under Colorado's doctrine of prior appropriation, a water right is a usufructuary right that affords its owner the right to use and enjoy a portion of the waters of the state. Colo. Const. art. XVI, § 6; § 37-92-103(12), C.R.S. (2016). Water rights are decreed to structures and points of diversion. Dallas Creek Water Co. v. Huey, 933 P.2d 27, 38 (Colo.1997). And under Colorado's system of decreed priority, which governs the administration of a water right vis-à-vis other water rights, the owner or holder of a water right in priority is entitled to "a specified quantity of water from the physically available, decreed source of supply at an identified point of diversion for application to beneficial use to the exclusion of all other uses not then operating in decreed priority." People ex rel. Simpson v. Highland Irrigation Co., 917 P.2d 1242, 1252 & n.17 (Colo.1996).

¶16 A water decree does not confer a water right—it confirms its existence and governs its administration. Id. at 1252. It is the decree that recognizes the scope of a water right, and any asserted right must appear on the face of the decree or result from a proper construction of its express provisions. Grand Valley, ¶ 53, 386 P.3d at 466–67. This includes any claimed alternate point of diversion, which must be recognized by decree as well. N. Colo. Water Ass'n v. Three Peaks Water, Inc., 859 P.2d 836, 843 (Colo.1993). We therefore turn to the decree at issue here to determine whether it includes the right K-LOW asserts.

¶17 Looking to the 2014 decree's plain language, we discern no right to divert water from the SD&SD, and the decree leaves no ambiguity on this point. It names a single diversion point—the pump on Faith's property—and specifies its location by legal description. No other points of diversion appear on the face of the decree. To the contrary,

the decree describes the pump as "the" point of diversion for the SD&SD right, a word choice that makes sense only if the decree recognizes a single point of diversion. If, as K-LOW asserts, the pump represents one of several diversion points, we would expect to see the decree describe it as "a" point of diversion or qualify it with additional language (e.g., "the lower diversion point"). The 2014 decree does neither. Thus, nothing in the 2014 decree's language recognizes a right to divert water from the SD&SD, and in fact, that language points in the opposite direction.

¶18 Still, K-LOW contends that we should read the 2014 decree to recognize alternate points of diversion, and therefore a right to divert water from the ditch, because it names multiple sources of supply. The plain language forecloses this construction as well.

¶19 To be sure, in a section titled "Source," the 2014 decree notes, "The [1914] decree also adjudicates the Plumb Drain Ditch and other accretions as sources of supply," but it does not identify alternate diversion points for those sources of supply. Instead, in a provision titled "Point of Diversion" that appears just three paragraphs later, the decree identifies the pump as "[t]he point of diversion" for the SD&SD right. We see nothing in this language to suggest the decree hides alternate diversion points under the header "Source." Rather, the decree describes the point of diversion as well as the sources of supply available to that point of diversion, thus identifying an essential element of the water right, see Empire Lodge Homeowners' Ass'n v. Moyer, 39 P.3d 1139, 1148 (Colo. 2001) (citing Simpson, 917 P.2d at 1252 n.17). K-LOW's multiple-diversion-point interpretation, on the other hand, confuses the decree's distinction between the right's sources and its diversion point and renders the decree internally inconsistent.[1]

¶20 K-LOW asserts a right that is both absent from the face of the 2014 decree and

---

1. Because we read the 1914 decree as recognizing a water right with a single point of diversion and the same sources of supply, we need not address K-LOW's contention that the 2014 decree impermissibly "consolidated" both the right's multiple sources of supply and (what K-LOW asserts were) its multiple diversion points.

There is simply no consolidation, impermissible or otherwise, to analyze. See S. Ute Indian Tribe v. King Consol. Ditch Co., 250 P.3d 1226, 1234 (Colo.2011) (holding reviewing court may construe scope of water rights adjudicated in prior decrees to determine effect of change to water right.)

in conflict with its text. We instead read the decree to mean what it says: the diversion point for the SD&SD right is the pump on Faith's property. There are no others, and the decree does not recognize a right to divert water from the ditch at issue. The water court therefore correctly concluded that right does not exist.

## IV. Conclusion

¶21 Because, by its plain language, the decree defining the water right allows its holder to divert water only at a pump down-river from the disputed ditch, and that language is not susceptible to any other reasonable interpretation, we conclude the decree does not include a right to divert water from the ditch at issue. We therefore affirm the water court's judgment.